STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND CROSS–
RESPONDENT, v. ROBERT W. LA FRANCE,
DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

Argued November 6, 1989—Decided February 21, 1990.

*Steven E. Braun,* Special Deputy Attorney General, argued the cause for appellant and cross-respondent (*John P. Goceljak,*

Special Deputy Attorney General–in–Charge, Acting Passaic County Prosecutor, attorney).

*William P. Robertson,* Designated Counsel, argued the cause for respondent and cross-appellant (*Alfred A. Slocum,* Public Defender, attorney; *William Welaj,* Designated Counsel, on the letter brief).

*Alexander P. Waugh, Jr.,* Assistant Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Peter N. Perretti, Jr.,* Attorney General, attorney).

The opinion of the Court was delivered by

O'HERN, J.

This case, like *State v. Masino,* 94 *N.J.* 436 (1983), concerns the scope of the statutory definition of kidnapping set forth in our Code of Criminal Justice, *N.J.S.A.* 2C:13–1. *Masino* considered whether the substantial distance requirement for asportation or movement of a kidnapping victim was to be measured in linear or in qualitative terms. The Court held in favor of the latter:

> [O]ne is transported a "substantial distance" if that asportation is criminally significant in the sense of being more than merely incidental to the underlying crime. That determination is made with reference not only to the distance traveled but also to the enhanced risk of harm resulting from the asportation and isolation of the victim. That enhanced risk must not be trivial. [94 *N.J.* at 447.]

This case considers the other predicate for a kidnapping conviction, the confinement of a victim. The specific question is whether the binding and gagging of a husband by a burglar, who proceeds to rape and rob the seven-month pregnant wife of the restrained husband, is to be regarded as "merely incidental" to the underlying crimes and thus not kidnapping under *N.J.S.A.* 2C:13–1b. We hold that such a criminal restraint can constitute kidnapping under the Code's definition and therefore reverse the judgment below.

## I

The crime of kidnapping sounds simple, but as *Masino* demonstrated, defining it "is a task of special subtlety." *Model Penal Code and Commentaries (Official Draft and Revised Comments)* (hereafter "MPC") § 212.1 comment at 221 (1980); *see* Diamond, "Kidnapping: A Modern Definition," 13 *Am.J. Crim.L.* 1, 1 (1985) ("Although kidnapping is an infamous crime, perceived by the public with both dread and morbid curiosity, and the subject of fine literature, it is also a crime that has eluded meaningful definition."). In *Masino* we traced the common law evolution of the crime of kidnapping. At first it was an aspect of false imprisonment. Diamond, *supra*, at 2. It was designed to deal with the conscription of forced labor to populate the colonies. *Id.* at 3. Over the centuries, its substantive content has been broadened. The shocking revulsion to crimes like the Lindbergh baby's kidnapping led many jurisdictions to stiffen the penalties for kidnapping. MPC, *supra*, § 212.1 comment at 215. In some states the crime is punishable by life imprisonment. Diamond, *supra*, at 3; *see, e.g.,* Ala.Code 1975 § 13A–6–43(c) (kidnapping in the first degree is a "Class A felony," *see* Ala.Code 1975 § 13A–5–6(a)(1), which is punishable by life imprisonment); Cal. Penal Code § 209(b) (life imprisonment with possibility of parole for kidnapping for robbery).

There are two basic kidnapping patterns. In one, the criminal seizes the victim and removes him or her to another place; in the other, the criminal confines the victim in the place where he or she is found. Were the latter not regarded as the moral equivalent of a kidnapping, the criminal might safely isolate a victim in the victim's "summer home in the mountains" and demand ransom with impunity. *See Commonwealth v. Hook*, 355 *Pa.Super.* 10, 13, 512 *A.*2d 718, 719 (1986) (quoting MPC § 212.1 comment (Tent. Draft No. 11, 1960) at 16).

Just as obviously, however, not every movement or confinement of a victim is a kidnapping. The easiest illustrations are

situations in which "the burglar puts the householder in the closet while he fills his sack with the silver," *see State v. Estes,* 418 *A.*2d 1108, 1113 (Me.1980), or in which the victim of a robbery is forced to open a safe in the home or go to the back of the store. *See State v. Dix,* 282 *N.C.* 490, 499, 193 *S.E.*2d 897, 902 (1973). Because courts sensed that these crimes should not be considered kidnapping, the problem became one of definition. In the absence of more precise statutes, courts supplied the necessary content.

A leading American case arose in the Virgin Islands, a jurisdiction that carried a mandatory sentence of life imprisonment for kidnapping for ransom, extortion or robbery. *See Virgin Islands v. Berry,* 604 *F.*2d 221 (3d Cir.1979). The *Berry* court noted the modern approach of construing kidnapping statutes "to prevent gross distortion of lesser crimes into a much more serious crime by excess of prosecutorial zeal." *Id.* at 226–27 (quoting *People v. Miles,* 23 *N.Y.*2d 527, 540, 245 *N.E.*2d 688, 695, 297 *N.Y.S.*2d 913, 922 (1969)). If not every asportation or detention rises to the level of kidnapping, it asked by what test does a court determine whether a kidnapping has taken place. The court drew on the California concept that kidnapping does not occur when the asportation or confinement is "merely incidental to" the commission of other substantive crimes and does not substantially increase the risk of harm beyond that necessarily present in the crime itself. *Id.* at 227 (citing *People v. Daniels,* 71 *Cal.*2d 1119, 1139, 80 *Cal.Rptr.* 897, 910, 459 *P.*2d 225, 238 (1969)). What each formulation seeks to guide is the qualitative judgment of juries on whether the asportation or detention that occurs during the course of the commission of another crime "significantly increases the dangerousness or undesirability of the defendant's behavior." *Ibid.* (citing *People v. Timmons,* 4 *Cal.*3d 411, 415, 93 *Cal. Rptr.* 736, 739, 482 *P.*2d 648, 651 (1971); *Wright v. State,* 94 *Nev.* 415, 415, 581 *P.*2d 442, 443 (1978); Note, "A Rationale of the Law of Kidnapping," 53 *Colum.L.Rev.* 540, 556 (1953); Comment, 110 *U.Pa.L.Rev.* 293, 296 (1961)). The *Berry* court

summarized these criteria in a two-part test of duration/distance and danger requirements and concluded that, despite variances in terminology, four factors were central to each of these approaches:

(1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense. [*Ibid.*]

The Virgin Islands kidnapping statute was later amended to include rape as one of the predicate kidnapping crimes.

The Third Circuit applied these same principles in *Virgin Islands v. Ventura*, 775 *F.*2d 92, 93 (1985), to conclude that the "duration and danger requirements are applicable though they need not be stringently applied." Applying these requirements, the court found that the evidence against the defendant met the standard and affirmed the kidnapping conviction. In *Ventura*, defendant abducted a teenage girl at gunpoint and forced her to go with him to a neighbor's house, where he raped and sodomized her. Defendant argued that neither the short distance he dragged the victim nor the amount of time he detained her met the *Berry* standard of kidnapping. The court ruled, however, that the abduction of the victim at gunpoint "created a significant danger to the victim *independent* of that posed by the separate offenses of rape and sodomy." *Virgin Islands v. Ventura, supra,* 775 *F.*2d at 98–99 (emphasis added). These general principles of kidnapping law echo the principles of the Model Penal Code that kidnapping definitions preclude kidnapping liability "for detentions merely incidental to rape and other crimes of violence." MPC, *supra,* § 212.1 comment at 224.

II

In *State v. Masino, supra,* 94 *N.J.* 436, we traced the development of the definitions of kidnapping in our Code of Criminal Justice to their roots in the Model Penal Code's recommendations. We noted the intention of our legislature to provide substantive standards by which courts and juries could

determine whether the underlying crime becomes the predominant crime and the technical movement or confinement does not amount to a violation of the kidnapping section. The drafters of such kidnapping legislation were obviously attempting to describe conduct of the criminal not ordinarily inherent in the underlying criminal conduct itself. The drafting technique used to accomplish the legislative purpose is a combination of subjective (state of mind) and objective criteria.

We begin by noting that the severity of sentences under the kidnapping statute, as under the entire Code of Criminal Justice, is carefully graded according to the actor's state of mind. *See State v. Harmon,* 104 *N.J.* 189 (1986) (discussion of Code structure with respect to sentencing and state of mind). Thus it grades the spectrum of restraints of the person in terms of the actor's intent. The Model Penal Code singled out four states of mind for first-degree-felony treatment (unless the victim is released unharmed): to hold one (a) for ransom or hostage; (b) to facilitate or avoid detection for the commission of another crime; (c) to inflict bodily injury on or terrorize the victim or another; or (d) to interfere with governmental functions. MPC § 212.1 at 129 (1985). The Model Penal Code suggests requiring movement from home or place of business, or movement "a substantial distance" or confinement "for a substantial period in a place of isolation" as possible objective factors. *Id.* at 128–29. Our Code departs from the Model Penal Code in eliminating entirely any duration and danger requirements when a person restrains the liberty of another for the purpose of demanding ransom or holding the victim hostage. These crimes are so offensive to public morality that they stand in a separate category.[1]

---

[1]The Legislature also deleted the words "in a place of isolation," believing that the notion of confinement carries with it the concept of an effective isolation from the usual protections of society. *Final Report of the New Jersey Criminal Law Revision Commission* (Oct. 1971), Vol. II at 184.

However, with respect to the three other states of mind—facilitating the commission or avoiding the detection of a crime, inflicting bodily injury on or terrorizing the kidnap victim or another, or interfering with the performance of a governmental function—a person is guilty of kidnapping under the New Jersey Code only if he or she "unlawfully removes another from his place of residence or business" or removes the victim "a substantial distance," or if he or she unlawfully confines another for a "substantial period." *N.J.S.A.* 2C:13–1b.

These criminal purposes, combined with movement from home or place of business or movement for a substantial distance or confinement for a substantial period, are the qualitative terms by which the Code distinguishes kidnapping from conduct that is merely incidental to the underlying crimes. But the Code does not make kidnapping a "free crime" when it accompanies another violent crime such as rape or robbery.

As under the Model Penal Code, a kidnapping under *N.J.S.A.* 2C:13–1b involving movement from home, place of business, or a "substantial distance," or confinement for a "substantial period" is a first-degree crime unless "the actor voluntarily releases the victim unharmed and in a safe place prior to apprehension," in which event it is a second-degree crime. First-degree kidnapping carries a special sentence of imprisonment between fifteen and thirty years. *N.J.S.A.* 2C:13–1c. If the victim is a child, and the defendant sexually assaults or attempts to hold the child for ransom during the course of the kidnapping, the Code calls for a mandatory sentence of twenty-five years without parole provided that the aggravating crimes are merged with the predicate kidnapping crime. *N.J.S.A.* 2C:13–1c(2); *State v. Louis*, 117 *N.J.* 250, 257 (1989).

Consistent with the Model Penal Code's graded scheme of dealing with kidnapping and related offenses, our Code provides that when the defendant does not act with any of the stated purposes under *N.J.S.A.* 2C:13–1, the restraint of liberty is a third-degree crime if it exposes another to the risk of

serious bodily injury or a condition of servitude. *N.J.S.A.* 2C:13–2. Finally, the disorderly-persons offense of false imprisonment requires only a knowing restraint that substantially interferes with the liberty of another. *N.J.S.A.* 2C:13–3. Hence, the Code adequately informs juries about which kinds of bodily restraint justify the most severe sanctions of the law. We are satisfied that the Code does not facilitate "overzealous or creative prosecution" for charging defendants with kidnapping, nor does it encourage the use of a kidnapping charge as some sort of a "bonus count" in an indictment. *Masino, supra,* 94 *N.J.* at 447–48. And, as noted above, merger may be appropriate in certain circumstances.

To recapitulate, the structure of the Code provides the definition of the movement or restraint that is not merely incidental to the underlying substantive crime. We realize that there is no mathematical certainty to the definitions of movement, nor to the distance and duration requirements of the Code. But the judicial attempts to draw mathematical lines have been equally unavailing. A recent California case dealt with the modern reality that most people have access to money today in automatic cash machines at the bank. *People v. Daniels,* 202 *Cal. App.*3d 671, 248 *Cal.Rptr.* 753 (1988). *Daniels* determined that the movement of a crime victim to the cash machine would constitute kidnapping if it substantially increased the risk of harm to the victim and was not incidental to the underlying criminal act, even though the movement was specifically to facilitate the commission of the robbery. *Id.* at 683, 248 *Cal. Rptr.* at 761.

### III

We turn now to the application of these principles to the facts of this case. For this purpose we may accept the version of the facts contained in defendant's Appellate Division brief. The defendant, by his own admission, entered the home of his victims in the early morning hours of February 17, 1985, "with

the intent to take money." He was confronted by the husband and wife and simulated possession of a gun to keep his victims at bay. Having feigned the possession of a gun, he tied up the husband. While inside the house for almost an hour, he "decided to commit an aggravated sexual assault upon [the wife]. The sexual assault and the robbery were the primary goals of the defendant." He contends, however, that the "restraints placed upon [the husband] were incidental to the other crimes committed by the defendant."

A jury convicted the defendant of first-degree kidnapping of the husband, first-degree robbery of both victims, aggravated sexual assault on the wife, and various lesser crimes. The court sentenced defendant to an aggregate term of fifty years imprisonment with a twenty-five year parole disqualifier. On appeal, the Appellate Division, in a reported opinion, 224 *N.J. Super.* 364 (1988), affirmed the defendant's convictions and sentences with the exception of the kidnapping count. Because of the interrelationship of the sentences, the result was a composite sentence of forty years with a twenty-year parole disqualifier. We granted the petition of the State to review the validity of the kidnapping count and of the defendant to review the other aspects of his conviction. 115 *N.J.* 57 (1989). We now reverse the dismissal of the kidnapping count.

IV

We are satisfied, under the principles stated, that the jury could have concluded that defendant had unlawfully confined the husband for a substantial period in a place of isolation with the intention, at a minimum, to inflict bodily injury on or to terrorize his wife. The record indicates that defendant forced the wife to tie up her husband in the bedroom. Defendant then dragged the wife into the hallway, where he sexually assaulted her. The husband was bound in the bedroom for at least thirty minutes. The husband eventually freed himself from his confinement and stunned the defendant by hitting him over the

head with a vase. Then with the help of his wife, who brought him a knife from the kitchen, the husband subdued the defendant and brought him to justice. The jury could rationally conclude that the thirty-minute confinement of the husband was a "substantial period" when coupled with the vulnerability and harm brought to his wife as a result of his confinement, and convict defendant of kidnapping.

For the kidnapping charge juries must make a qualitative judgment about the nature of the asportation or the confinement. The isolation of this family with an intruder believed to be armed underscored that the husband, as the victim, was moved "beyond the reach of * * * law and effective aid of his associates." *Masino, supra,* 94 *N.J.* at 441 (quoting MPC § 212.1 comment (Tent. Draft No. 11, 1960) at 13). As we also noted in *Masino,* these requirements "signified isolation and vulnerability to continued harm. The forlorn state of the victim remained the paramount evil of kidnapping." *Id.* at 441. After the husband was confined, he was struck by the intruder. This isolation of the husband, done for the purpose of facilitating the robbery, by itself could have sustained the kidnapping.

But beyond the injury to the husband, there can be no doubt that the terrorization and injury of the victim's wife equates with the qualitative legislative goals that turn a detention into a kidnapping. *N.J.S.A.* 2C:13–1b clearly makes a confinement for a "substantial period" of time a first-degree kidnapping if it facilitates the terrorization or injury of another. In addition, we may recall the *Berry* court's qualitative characterization of detentions that are not merely incidental to other crimes as being measured in terms of whether the crime "significantly increases the dangerousness or undesireability of the defendant's behavior." 604 *F.*2d at 227. There was a particular terror in this incident that psychologically injured both spouses: the exposure of each to the added humiliation inherent in defendant's acts committed against them in the presence of each other and the inability of the isolated husband to avert the terror to his wife and injury to her and their unborn child.

594

■ We repeat, as we did in *Masino,* that one is confined for a substantial period if that confinement "is criminally significant in the sense of being more than merely incidental to the underlying crime," and that determination is made with reference not only to the duration of the confinement, but also to the "enhanced risk of harm resulting from the [confinement] and isolation of the victim [or others]. That enhanced risk must not be trivial." 94 *N.J.* at 447.

■ The trial court's charge to the jury here adequately articulated the fair consideration of these factors:

The elements of kidnapping are: (1) that the defendant, Robert LaFrance, unlawfully confined [the victim] for a substantial period; and (2) that the confinement was for the purpose of facilitation of the commission of another crime or to inflict bodily injury on or terrorize [the victims].

Kidnapping is of two degrees. The defendant is charged in this case with kidnapping in the first degree. You are to consider both degrees.

Kidnapping is a crime of the first degree. If the actor releases the victim unharmed in a safe place prior to apprehension, it is a crime of the second degree.

There was no objection to the charge, so any claimed error must be one that could have had the capacity to bring about an unjust result. The charge might have been better but it was not flawed. Future trials should reflect that we have emphasized that the charge to the jury convey the elements of the crime in the factual context of the case. *State v. Concepcion,* 111 *N.J.* 373, 379 (1988). Court and counsel should frame a charge to the jury in which defendant's conduct is measured in terms of whether the detention was merely incidental to the underlying crimes. A court may wish to use the *Berry* factors, suggesting to the jury that it consider: (1) the duration of the detention; (2) whether the detention occurred during the commission of a separate offense; (3) whether the detention was inherent in the separate offense; and (4) whether the detention created a significant danger to the victim or another independent of that posed by the separate offense.

■ Defendant raised three arguments in his cross-petition: (1) the jury's verdict with respect to the robbery convic-

tion was against the weight of the evidence, given the fact that defendant only simulated having a gun by placing his hand in his pocket; (2) the trial court improperly admitted prejudicial testimony from the victims that defendant "was in complete control and knew what he was doing," and that they could no longer live in their home because of the incident; and (3) the trial court excessively sentenced defendant by failing to take into account mitigating factors, and imposing consecutive sentences for the aggravated sexual assault and robbery convictions. We affirm the first two questions substantially for the reasons stated in the Appellate Division opinion. *See State v. LaFrance, supra,* 224 *N.J.Super.* at 371–74. Particularly with regard to defendant's first argument, we reiterate our holding in *State v. Hutson,* 107 *N.J.* 222, 228 (1987), where we emphasized that as long as the object (simulating the deadly weapon) is *"fashioned in such a manner* that the victim *reasonably believes* it to be capable of serious bodily harm or death," the criteria for finding a defendant guilty of first-degree robbery is met. Although we held that the evidence was not sufficient to meet these criteria in *Hutson,* we believe that the victims in this case reasonably believed that defendant had a gun. In regard to defendant's third argument, although the sentence is severe, it did not violate *State v. Yarbough,* 100 *N.J.* 627 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986), in that kidnapping allows a thirty-year sentence with a fifteen-year parole disqualifier, and both the robbery and rape convictions allow a twenty-year sentence with a ten-year parole disqualifier. Under the *Yarbough* guidelines of limiting the aggregate term of imprisonment to the two most serious offenses—in this case, the kidnapping and rape or robbery counts—a fifty-year sentence with a twenty-five year parole disqualifier is not excessive. *Id.* 100 *N.J.* at 644.

The judgment of the Appellate Division concerning the kidnapping conviction is reversed and the judgment of conviction of kidnapping is reinstated. The judgment of the Appellate Division in all other respects is affirmed.

*For affirmance in part, reversal in part and reinstatement* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.