# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0331-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FRANCISCO GREEN,

     Defendant-Appellant.

_____

Submitted January 30, 2020 – Decided July 16, 2020

Before Judges Alvarez and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 14-05-0622.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (David M. Liston, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Francisco Green appeals from the August 15, 2017 judgment of conviction entered after a jury found him guilty of first-degree kidnapping and second-degree attempted aggravated sexual assault and the sentence imposed for those crimes. We affirm.

I.

We derive the following facts from the record. On January 12, 2014, at approximately 2:00 a.m., E.N.[1] was walking home from an evening out with friends. While on a well-lighted street near her house, E.N. sat on the steps of a closed store to smoke a cigarette. A man wearing a grey hooded sweatshirt, later identified as defendant, approached E.N. and sat down next to her.

After telling defendant to leave her alone, E.N. got up and continued her walk home. When E.N. reached the front of her neighbor's driveway, defendant grabbed her from behind, putting his right arm around her face. Defendant dragged E.N. down the long dark alley of her neighbor's driveway and into her neighbor's backyard.

E.N. screamed, but defendant told her to "shut up, that he had a knife, and he would use it." Defendant shoved E.N. to the ground, kneeled in front of her, pinned her down, and pulled off her jeans and underwear. E.N. struggled to

_____

[1] We use initials to maintain the confidentiality of the victim. R. 1:38-3(c)(12).

break free and told defendant to stop, but he "kept telling [E.N.] to shut up" and struck her in the mouth, causing her lip to bleed.

The attack ended approximately six minutes after it began when a motion-sensing light illuminated the area, causing defendant to flee. Because E.N.'s neighbor had called 9-1-1 after hearing her screams, police arrived shortly after defendant fled. They found E.N. on the ground bleeding from her mouth, "crying hysterically," and barely able to speak or breathe. She was transported to a hospital for medical treatment.

Investigating officers obtained video footage from nearby surveillance cameras that recorded defendant's assault on E.N. Using still images of defendant from the video recordings, police created a "be on the lookout" communication, which was distributed to local law enforcement agencies.

A few days after the incident, a detective spotted defendant driving a car and recognized him from the "be on the lookout" communication. The detective pulled defendant over for a traffic infraction. During the stop, an officer observed in plain view in the car a grey hooded sweatshirt "that was . . . consistent with the clothing worn by the individual . . . depicted in the videos." The officers impounded the car and obtained a search warrant. Laboratory testing identified E.N.'s blood on the sweatshirt.

A-0331-17T2

A grand jury subsequently indicted defendant, charging him with first-degree kidnapping, N.J.S.A. 2C:13-1(b), and second-degree attempted aggravated sexual assault, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-2(a)(3).[2]

The trial court denied defendant's pretrial motion to suppress the blood-stained sweatshirt. The issues raised in the motion did not include whether the affidavit on which the search warrant was based contained false or misleading information.

The court ordered an evaluation of defendant's competency to stand trial. A psychologist who examined defendant opined that despite suffering from antisocial personality disorder, he was competent to stand trial. About a year later and just prior to trial, defense counsel asked the court to order a second evaluation because defendant had hit his head in a fall at the county jail three months earlier and had been exhibiting troubling behavior. According to counsel, defendant was either not able or unwilling to cooperate with his defense and was refusing to wear civilian clothes at trial, preferring to appear in his prison uniform.

---

[2] Although the indictment lists the attempted sexual assault charge as a first-degree offense, the grading was corrected prior to trial and is accurately reflected in the judgment of conviction as a second-degree offense.

A-0331-17T2

The trial court conducted a competency hearing during which it held an hour-long colloquy with defendant. The court found defendant demonstrated he understood the parties' roles at trial, the charges, the maximum sentence, and the role of the judge and jury. The court concluded there was "no doubt in the court's mind . . . defendant [understood] that [he was] going to be subject to a jury trial," found defendant's mental processes to "be intact[,]" and found that he had a "meaningful understanding of the facts and issues." Based on these findings and the expert's report, the court found defendant competent to stand trial.

Afterwards, defendant moved to dismiss the indictment, arguing the State could not prove beyond a reasonable doubt the asportation element of the kidnapping charge. The trial court denied the motion, finding the asportation element of kidnapping could be satisfied by proof of defendant's movement of the victim from a public street to a secluded backyard, which increased the victim's risk of harm.

After a six-day trial, the jury convicted defendant on both counts. The trial court denied defendant's motions for a judgment of acquittal notwithstanding the verdict and for a new trial because there was sufficient evidence on which the jury could find him guilty of the offenses.

A-0331-17T2

At sentencing, the court granted the State's application to sentence defendant to an extended term as a persistent offender pursuant to N.J.S.A. 2C:44-3(a) based on his prior convictions. The court found it "clear that [defendant's] criminal activity has progressed, and has gotten more violent over time" and that he was "a threat to the public at large, and the public needs protection." The court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense), six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal convictions and the seriousness of those offenses), and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter others). The court found no mitigating factors and that the aggravating factors substantially outweighed the nonexistent mitigating factors.

After merging the attempted sexual assault conviction into the kidnapping conviction, the court imposed a twenty-five-year period of incarceration, subject to an eighty-five-percent parole disqualifier, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

This appeal followed. Defendant makes the following arguments:

> POINT I
>
> THE TRIAL COURT COMMITTED ERROR IN
> FAILING TO ORDER A SECOND COMPETENCY
> EVALUATION OF DEFENDANT AFTER HE
> EXHIBITED DEMONSTRABLE SIGNS OF

INCOHERENCY AFTER SUSTAINING A HEAD INJURY.

POINT II

DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL DUE TO [THE] COURT'S DENIAL OF HIS MOTION TO SUPPRESS THE BLOOD-STAINED SWEATSHIRT AND THE FAILURE TO HOLD AN EVIDENTIARY HEARING.

POINT III

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTIONS FOR JUDGMENTS OF ACQUITTAL N.O.V. OR NEW TRIAL WITH REGARD TO THE KIDNAPPING CONVICTION BECAUSE THE STATE FAILED TO PROVE THE ASPORTATION ELEMENT OF THE KIDNAPPING STATUTE.

POINT IV

BECAUSE THE JUDGMENT OF ACQUITTAL ON THE KIDNAPPING COUNT SHOULD HAVE BEEN GRANTED, THE DEFENDANT'S SIMILAR MOTION ON THE FIRST-DEGREE ATTEMPTED AGGRAVATED SEXUAL ASSAULT SHOULD HAVE BEEN GRANTED.

POINT V

THE SENTENCE OF TWENTY-FIVE YEARS PRISON WAS EXCESSIVE BECAUSE THE COURT ENGAGED IN DOUBLE-COUNTING OF DEFENDANT'S TWO PRIOR CONVICTIONS WHEN GRANTING THE STATE'S APPLICATION FOR AND [SIC] EXTENDED TERM SENTENCE

AND ALSO CONSIDERING THOSE SAME CONVICTIONS IN SUPPORT OF AGGRAVATING FACTOR NUMBER THREE – THE EXTENT OF THE DEFENDANT'S PRIOR RECORD.

## II.

"No person who lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures."  N.J.S.A. 2C:4-4(a).  "Where evidence raises a bona fide doubt as to a defendant's competence, a competency hearing must be held."  State v. Purnell, 394 N.J. Super. 28, 47 (App. Div. 2007).

For a defendant to be found competent to stand trial, the proofs must establish the following by a preponderance of the evidence:

> (1)   That the defendant has the mental capacity to appreciate his presence in relation to time, place and things; and
>
> (2)  That his elementary mental processes are such that he comprehends:
>
> (a)   That he is in a court of justice charged with a criminal offense;
>
> (b)  That there is a judge on the bench;
>
> (c)  That there is a prosecutor present who will try to convict him of a criminal charge;

(d) That he has a lawyer who will undertake to defend him against that charge;

(e) That he will be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he chooses to testify and understands the right not to testify;

(f) That there is or may be a jury present to pass upon evidence adduced as to guilt or innocence of such charge or, that if he should choose to enter into plea negotiations or to plead guilty, that he comprehend the consequences of a guilty plea and that he be able to knowingly, intelligently, and voluntarily waive those rights which are waived upon such entry of a guilty plea; and

(g) That he has the ability to participate in an adequate presentation of his defense.

[N.J.S.A. 2C:4-4(b); Purnell, 394 N.J. Super. at 47-48.]

The determination of whether a defendant is competent to stand trial is a determination of whether he understands his position and can consult intelligently with counsel in preparing a defense. Aponte v. State, 30 N.J. 441, 450 (1959). Although the court may rely on expert opinion, "the ultimate determination of the issue is for the judge to make, not experts." Purnell, 394 N.J. Super. at 52; accord State v. Gorthy, 226 N.J. 516, 530-31 (2016). The court has a continuing obligation to revisit defendant's competency if warranted. Purnell, 394 N.J. Super. at 49.

9

Our review of the trial court's competency determination is "highly deferential." State v. M.J.K., 369 N.J. Super. 532, 548 (App. Div. 2004); State v. Moya, 329 N.J. Super. 499, 506 (App. Div. 2000). The decision is discretionary and will be sustained if there is sufficient supporting evidence in the record. Purnell, 394 N.J. Super. at 50.

After carefully reviewing the record in light of these principles, we are satisfied the trial court did not abuse its discretion when it determined defendant was competent to stand trial. The court engaged in an extensive examination during which it had the opportunity to observe defendant firsthand and gauge his understanding of the criminal trial he faced. The court addressed each of the factors in N.J.S.A. 2C:4-4 and made detailed findings in support of its competency determination. In addition, the court was aware of counsel's concerns regarding defendant's jailhouse fall and found any injuries he suffered did not affect him in any way that would preclude him from standing trial. This conclusion comported with the opinion of the expert who examined defendant before the fall but after he reported he was hearing voices and seeing visions.

Nor are we persuaded by defendant's argument that his lack of competency is evidenced by his initial refusal to wear civilian clothes for his trial. The trial

court examined that issue at the hearing and found defendant's explanation to be rational.  Notably, defendant ultimately decided to wear civilian clothes at trial.

Additionally, the record does not indicate defendant's mental condition "preclude[d] meaningful interaction with his . . . attorney . . . ."  Gorthy, 226 N.J. at 532.  After the State rested, the court noted defendant had "handled himself very well . . . during court" and had "been very engaged . . . with his attorney during the entire matter."  Later, the court told defendant, "[T]here's no doubt in my mind you're understanding what's going on here today," and defendant replied "Yeah, I understand."

### III.

For the first time on appeal, defendant argues the trial court erred because he was entitled to a hearing under Franks v. Delaware, 438 U.S. 154 (1978), with respect to what he alleges were false statements in the affidavit submitted in support of the search warrant for his car.  According to defendant, the officers falsely stated that they had made "positive identifications" of him as E.N.'s assailant at the time of the motor vehicle stop.

Pursuant to the holding in State v. Witt, 223 N.J. 409 (2015), we decline to review defendant's argument.  In that case, the defendant challenged the lawfulness of a search of his car before trial but had not challenged the

lawfulness of the motor-vehicle stop that preceded the search until the case reached our court. Id. at 418. We considered the validity of the traffic stop. The Supreme Court reversed, noting "that the lawfulness of the stop was not preserved for appellate review" and that we "should have declined to entertain the belatedly raised issue." Id. at 419. As the Court explained, "[f]or sound jurisprudential reasons, with few exceptions, our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available." Ibid. (quoting State v. Robinson, 200 N.J. 1, 20 (2009) (quotations omitted)). "[I]t would be unfair, and contrary to our established rules, to decide the lawfulness of the stop when the State was deprived of the opportunity to establish a record that might have resolved the issue through a few questions . . . ." Ibid.

There is no question defendant did not request a Franks hearing before the trial court. The State, therefore, was denied the opportunity to develop a record with respect to the veracity of the statements defendant now challenges and the state of the affiant's knowledge when the statements were made in the affidavit.

We also find no legal support for defendant's argument that the trial court erred by not holding an evidentiary hearing on his motion to suppress, whether or not Franks applied. A warrant is "presumed to be valid, and defendant bears

the burden of demonstrating that the warrant was issued without probable cause or that the search was otherwise unreasonable." State v. Chippero, 201 N.J. 14, 26 (2009) (quoting State v. Evers, 175 N.J. 355, 381 (2003)). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." State v Perry, 59 N.J. 383, 394 (1971) (quotations omitted).

Rule 3:5-7(c) requires a testimonial hearing on a motion to suppress evidence when there is a dispute as to a material fact. See State v. Parker, 459 N.J. Super. 26, 30-31 (App. Div. 2019). Our review of the record reveals no disputed material facts requiring a hearing. Defendant did not dispute the facts in the affidavit in his motion to suppress. He challenged only the argument that those facts established a basis for issuance of the warrant.

## IV.

We review de novo a trial court's denial of a motion for a judgment of acquittal, "applying the same standard as the trial court." State v. Zembreski, 445 N.J. Super. 412, 430 (App. Div. 2016). Under that standard, a court "must determine only whether, 'based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond

a reasonable doubt.'" Ibid. (quoting State v. Williams, 218 N.J. 576, 594 (2014). "If the evidence satisfies that standard, the motion must be denied." Ibid. (quoting State v. Spivey, 179 N.J. 229, 236 (2004)).

When deciding a motion for acquittal the court is not "concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State . . . ." Id. at 431 (quoting State v. Kluber, 130 N.J. Super. 336, 342 (App. Div. 1974)). If evidence exists, "the motion must be denied." Id. at 430 (quoting Spivey, 179 N.J. at 236).

A defendant has a similarly high burden when moving for a new trial based on a jury verdict being against the weight of the evidence. Rule 3:20-1 provides:

> The trial judge shall not . . . set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under law.

Motions for a new trial are "addressed to the sound discretion of the trial judge" and "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." State v. Armour, 446 N.J. Super. 295, 305-06 (App. Div. 2016) (quoting R. 2:10-1).

"A person is guilty of kidnapping if he unlawfully removes another . . . a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes: . . . [t]o facilitate commission of a crime . . . ."  N.J.S.A. 2C:13-1(b)(1).  The "substantial distance" is not defined only as "a linear measurement" of the distance the victim is moved.  State v. Jackson, 211 N.J. 394, 415 (2012) (quoting State v. Masino, 94 N.J. 436, 445 (1983)).  The Supreme Court has defined "substantial distance" as "one that 'isolates the victim and exposes him or her to an increased risk of harm.'"  Ibid. (quoting Masino, 94 N.J. at 445).

"[O]ne is confined for a substantial period if that confinement 'is . . . more than merely incidental to the underlying crime,' and that determination is made with reference not only to the duration of the confinement, but also to the 'enhanced risk of harm resulting from the [confinement] and isolation of the victim.'"  State v. La France, 117 N.J. 583, 594 (1990) (quoting Masino, 94 N.J. at 447).  Stated differently, in considering whether the asportation element is met, courts should consider whether the underlying crime and the subsequent movement or confinement are separate and distinct acts and whether that movement or confinement increased the risk of harm to the victim.  Jackson, 211 N.J. at 415; La France, 117 N.J. at 594; see State v. Matarama, 306 N.J.

Super. 6, 22 (App. Div. 1997) ("substantial distance" element satisfied where, during the course of a robbery, "the victim was dragged twenty-three feet . . . to a small alley[,] . . . a more secluded place where the assailants could more easily attack her without being seen").

Defendant argues the State failed to prove the asportation element of kidnapping because his movement of E.N. was "merely incidental" to his attempted sexual assault. Our review of the record identified ample evidence to support the jury's verdict under either the "substantial distance" or "substantial period of confinement" element of the kidnapping statute. Defendant forcibly moved E.N. from a public sidewalk, down a dark alley, and into the backyard of a residence. The jury could reasonably have determined that his intention was to isolate her from public view to enhance the likelihood that he could assault her without detection, thus exposing her to increased risk of harm. In addition, the jury could reasonably have concluded that defendant's movement of E.N. was separate and apart from the attempted sexual assault because it was not necessary to move E.N. to complete that crime.

V.

"Appellate review of the length of a sentence is limited." State v. Miller, 205 N.J. 109, 127 (2011). An appellate court "must not substitute its judgment

16

for that of the sentencing court[,]" State v. Fuentes, 217 N.J. 57, 70 (2014), and is bound to affirm the sentence absent a "clear abuse of discretion." State v. Roth, 95 N.J. 334, 363 (1984).

> Appellate courts must affirm the sentence of a trial court unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not "based upon competent credible evidence in the record;" or (3) "the application of the guidelines to the facts" of the case "shock[s] the judicial conscience."
>
> [State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting Roth, 95 N.J. at 364-65).]

There should be no double-counting of aggravating factors. Fuentes, 217 N.J. at 76; State v. Yarbough, 100 N.J. 627, 643-44 (1985). Impermissible double-counting occurs when "established elements of a crime for which a defendant is being sentenced [are] considered as aggravating circumstances in determining that sentence." State v. Kromphold, 162 N.J. 345, 353 (2000).

Defendant argues the trial court engaged in double-counting when it considered his criminal history both in granting the motion for a discretionary extended term and when finding aggravating factors. We do not agree.

When determining whether an extended term is appropriate, N.J.S.A. 2C:44-3(a), a sentencing court must "review and determine whether a defendant's criminal record of convictions renders him or her statutorily

eligible" to be sentenced as a persistent offender. State v. Pierce, 188 N.J. 155, 168 (2006). When sentencing a defendant within the extended-term range, the court's focus should turn from defendant's prior convictions to the present offense and a "factual assessment of the defendant's whole person." Id. at 167.

The court was required to consider defendant's prior convictions to determine if he was eligible for extended-term sentencing. See id. at 168. This did not preclude the court from considering those convictions when making determination with respect to the existence of aggravating factors. See State v. McDuffie, 450 N.J. Super. 554, 576 (App. Div. 2017).

Lastly, although eligible for an extended-term sentence of between thirty years and life, the trial court sentenced defendant to twenty-five years. Considering both defendant's sentence was in the range for an ordinary term for first-degree kidnapping and defendant was eligible for a sentence between thirty years and life, the sentence does not "shock the judicial conscience." See N.J.S.A. 2C:13-1(c)(1); Roth, 95 N.J. at 364-65.

To the extent we have not addressed defendant's other arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0331-17T2