**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3195-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERTO UBIERA,

    Defendant-Appellant.

_____

Argued March 4, 2024 – Decided July 12, 2024

Before Judges Gilson, Berdote Byrne, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 20-01-0263.

Daniel S. Rockoff argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Taylor L. Napolitano, Assistant Deputy Public Defender, of counsel and on the brief).

Braden Couch argued the cause for respondent (Theodore N. Stephens, II, Essex County Prosecutor, attorney; Braden Couch, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant was convicted of first-degree murder, first-degree robbery, first-degree kidnapping, first-degree felony murder, third-degree possession of a weapon for an unlawful purpose, and fourth-degree unlawful possession of a weapon. Pursuant to N.J.S.A. 2C:11-3(b)(4)(g), the court sentenced defendant to life imprisonment without parole. This appeal followed.

On direct appeal, defendant raises the following contentions:

POINT I

GIVEN THE LACK OF EVIDENCE OF A COMPLETED ROBBERY OR A KIDNAPPING OF A SUBSTANTIAL DISTANCE OR PERIOD OF TIME, [DEFENDANT] IS ENTITLED TO REVERSAL ON THOSE COUNTS. [DEFENDANT] IS ALSO ENTITLED TO REVERSAL OF THE FELONY MURDER COUNT AND RESENTENCING ON THE MURDER COUNT GIVEN THIS ERROR.

A. The State's Evidence of a Completed Theft was Insufficient.

B. The State Presented Insufficient Evidence of a Kidnapping.

C. Reversal of the Robbery and Kidnapping Counts Necessitates Reversal of the Felony Murder Count and Resentencing on the Murder Count.

A-3195-21

POINT II

[DEFENDANT] IS ENTITLED TO A NEW TRIAL BECAUSE THE COURT ERRONEOUSLY ADMITTED UNDULY PREJUDICIAL TEXT MESSAGES BETWEEN HIM AND SOMEONE OTHER THAN HIS GIRLFRIEND THAT WERE NOT RELEVANT.

POINT III

THE TRIAL COURT DENIED [DEFENDANT] THE RIGHT TO A FAIR TRIAL ON THE FELONY MURDER, ROBBERY, AND KIDNAPPING COUNTS BY FAILING TO DELIVER AN INSTRUCTION ON ATTEMPTED COMMISSION OF A THEFT AND BY FAILING TO CHARGE THE JURY ON THE SAFE RELEASE ELEMENT OF FIRST-DEGREE KIDNAPPING, NEGATING THE TWO POSSIBLE PREDICATE OFFENSES FOR THE FELONY MURDER CHARGE.  [DEFENDANT] IS ALSO ENTITLED TO RESENTENCING ON THE MURDER COUNT GIVEN THIS ERROR.

A.  The Trial Court Failed to Instruct the Jury on Attempted Theft.

B.  The Trial Court Failed to Instruct the Jury on the Safe Release Element of Kidnapping.

C.  The Court's Charging Errors on First-Degree Robbery and Kidnapping Necessitate Reversal on the Felony Murder Count and Resentencing on the Murder Count.

A-3195-21

POINT IV

[DEFENDANT'S] SENTENCE OF LIFE WITHOUT PAROLE CANNOT STAND BECAUSE THE "BY HIS OWN CONDUCT" TRIGGERING FACTOR WAS NOT CHARGED AS AN ELEMENT IN THE INDICTMENT; THE COURT FAILED TO PROVIDE THE JURY WITH ANY INSTRUCTIONS ON THE TRIGGERING FACTOR; AND THERE IS INSUFFICIENT EVIDENCE OF THE ROBBERY AND KIDNAPPING COUNTS FORMING THE BASIS FOR THE AGGRAVATING FACTOR.

We reject these contentions and affirm.

I.

We derive the following facts from the record. On August 16, 2018, at approximately 7:00 a.m., Tarlok Singh opened the convenience store located at 33 North Park Street in East Orange. Defendant, a former employee and coworker of Singh, arrived shortly thereafter on his bike. Defendant wore a bike helmet, a reflective vest, and brought along a green backpack. Defendant briefly entered and exited the store, and loitered by his bike. Several patrons, including Albert Burnett, entered the store just after it opened. While in the store, Burnett purchased tea and spoke with Singh. Burnett told Singh he would return in approximately ten minutes. After the other customers left, defendant re-entered the store and was alone with Singh for approximately one minute. Defendant then briefly exited the store, re-entered, and was alone with Singh for an

4

additional one-and-three-quarters minutes before they were interrupted by Jose Mendez-Amaya, followed by several other customers. When Mendez-Amaya entered, no one was behind the counter to assist customers. When Mendez-Amaya and the other customers attempted to pay, defendant came out from the back of the store to the cash register. At the register, defendant told two customers to leave without paying. When Mendez-Amaya approached the register, defendant also told him to leave the store.

Around the same time, another customer, Peter Jordine, entered the store to get change and buy some items. Jordine called out for Singh and saw defendant come from the back of the store towards the register. Jordine asked defendant where Singh was, and defendant responded he did not know. Jordine later stated defendant looked "spaced out" and "nervous." When Jordine attempted to pay, defendant struggled to open the cash register. Defendant eventually opened the register, but there was no money inside, and defendant told Jordine to leave without paying. Jordine again asked defendant about Singh's whereabouts and defendant responded Singh was not there.

Shortly after Mendez-Amaya's and Jordine's exit, Burnett reentered the store. Like the prior customers, Burnett did not see Singh upon his reentry. Burnett called out for Singh and started walking to the back of the store towards

5

the bathroom. At that moment, defendant came out from the back, ran past Burnett, and out the front door. Burnett continued towards the bathroom at the back of the store, where he found Singh dead. Singh had been handcuffed, a scarf tied around his mouth, his throat slashed twice, with two stab wounds in his back. Burnett ran out of the store and saw defendant racing away on his bike. Burnett attempted to draw the attention of passing cars before heading to a gas station to call the police.

Defendant proceeded towards the City of Orange bus garage and in this general area changed his clothes before heading home. On or about August 17, 2018, defendant was arrested. Police searched defendant's residence where he resided with his girlfriend. Officers recovered defendant's bicycle, backpack, vest, and helmet, each matching the description from the crime scene. Defendant's backpack contained a jacket, black plastic gloves, and an empty handcuff case but police did not find any handcuffs. Forensics failed to find defendant's fingerprints at the crime scene or the victim's blood on defendant's belongings. No murder weapon was ever found nor was the clothing defendant wore in the store.

Police did recover deleted messages from defendant's cell phone, showing he communicated with a person called "Grace" who was not his girlfriend.

6

Grace had repeatedly implored defendant to send her money in the days before the murder. Defendant told Grace to

> calm down. Taking it easy . . . because without money you can not [sic] move and I'm very desperate to make something to send you the list, but how everything is going, everybody wants to take advantage of other people. Not pray for these people every day who got queens and heart, did not mean you do something stupid to none of them. . . . Which I think I'm going to have to break somebody's head so they can give me mine. Maybe that's going to be the best solution to solve the problem. Did this shit if [sic] somebody and get locked up, which I don't want.

On August 15, 2018, the day before the murder, Grace texted defendant she intended to sell her cell phone for money. Defendant replied, begged her not to cell her phone, and told her he would send her money by 1:00 p.m. the following day. When Grace asked how confident he was in his promise, defendant texted he was "100 percent plus" certain he would have money for her on August 16, 2018.

On November 9, 2018, defendant was indicted for first-degree murder, contrary to N.J.S.A. 2C:11-3(a)(1) (count one); first-degree kidnapping, contrary to N.J.S.A. 2C:13-1(b)(1) (count two); felony murder, contrary to N.J.S.A. 2C:11-3(a)(3) (count three); third-degree possession of a weapon with an unlawful purpose, contrary to N.J.S.A. 2C:39-4(d) (count four); and fourth-

7

degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(d) (count five). On January 31, 2020, an Essex County Grand Jury returned a superseding indictment, adding a charge for first-degree robbery, contrary to N.J.S.A. 2C:15-1.[1]

Prior to trial, the State moved to admit defendant's text messages into evidence over defendant's objection. The trial court granted the State's motion, finding the messages satisfied N.J.R.E. 403 and 404. Defendant proceeded to trial and a jury found him guilty of all charges. At sentencing, the court merged defendant's robbery conviction into the felony murder conviction, and merged defendant's felony murder and unlawful purpose convictions into the first-degree murder conviction.

## II.

We review appeals attacking the sufficiency of evidence to support a criminal conviction utilizing the same standard for judgment of acquittal. See State v. Josephs, 174 N.J. 44, 81 (2002); see also McDaniel v. Brown, 558 U.S. 120, 131 (2010) (equating reversal for insufficient evidence with a judgment of acquittal). In that instance, we "determine[] whether the 'evidence would enable

---

[1] Defendant was also charged with third-degree theft and terroristic threats. Those two charges were for unrelated incidents pertaining to events in late 2016 and were ultimately dismissed.

A-3195-21

a reasonable jury to find that the accused is guilty beyond a reasonable doubt of the crime or crimes charged.'"  State v. Lodzinski, 246 N.J. 331, 358 (Patterson, J., concurring), reconsid. granted on other grounds, 248 N.J. 451, rev'd on other grounds, 249 N.J. 116 (2021) (quoting State v. Perez, 177 N.J. 540, 549 (2003)). We afford the State the benefit of all favorable inferences that can be reasonably drawn from the evidence admitted at trial.  Id. at 340 (quoting State v. Reyes, 50 N.J. 454, 459 (1967)).  This requires us to consider all of the admitted evidence, "regardless of whether that evidence was admitted erroneously." McDaniel, 558 U.S. at 131.  Our inquiry is whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  State v. Lodzinski, 249 N.J. 116, 161 (2021) (Patterson, J., dissenting) (emphasis omitted) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

A. The Robbery, Kidnapping, and Felony Murder Convictions.

Defendant contends the jury erred in finding sufficient evidence of a robbery or a kidnapping.  He asserts the State produced insufficient evidence of a completed theft because "there [was] no direct evidence that [he] did anything besides enter the store that day."  Absent this evidence, he asserts he could have been convicted only for robbery based upon attempted theft, a charge the jury was not instructed upon.

9

Similarly, defendant argues there was insufficient evidence of a substantial period of confinement or distance to support his kidnapping conviction. Based on this alleged lack of evidence of either offense, he concludes his felony murder conviction must be reversed and he must be resentenced solely on the first-degree murder conviction. We disagree.

1. Robbery

Pursuant to N.J.S.A. 2C:15-1(a)(1), a person is guilty of robbery if, "in the course of committing a theft," he or she "[i]nflicts bodily injury or uses force upon another . . . ." The statute explains the phrase "in the course of committing a theft" includes "an attempt to commit a theft or in immediate flight after the attempt" or completion of the offense. N.J.S.A. 2C:15-1(a).

Defendant claims the record lacks support of a completed theft. "Circumstantial evidence need not preclude every other hypothesis in order to establish guilt beyond a reasonable doubt." State v. Kamienski, 254 N.J. Super. 75, 105 (App. Div. 1992); cf. Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial."). "'It is not fatal to the State's case' if . . . [it] 'fail[s] to exclude every other conceivable hypothesis except guilt.'" Lodzinski, 246 N.J. at 358 (quoting State v. Brown, 80 N.J. 587, 599 (1979)).

The existence of circumstantial evidence of a completed theft to support a robbery conviction distinguishes this case from the caselaw defendant relies upon in support of reversal. Mendez-Amaya testified defendant was permitting patrons to take goods from the store without paying. Jordine testified when defendant opened the cash register, he observed it was empty. The State also presented testimony Bennett purchased tea before he left the store; at the very least, a jury could reasonably infer money from that sale should have been in the register. The evidence adduced at trial distinguishes this matter from State v. Dehart, 430 N.J. Super. 108, 117 (App. Div. 2013), where there was no evidence – direct or circumstantial – to indicate anything of value was taken. "A rational jury could conclude beyond a reasonable doubt" a completed theft, occurred based on the evidence of an empty cash register after a purchase had been made. Cf. State v. Fierro, 438 N.J. Super. 517, 531 (App. Div. 2015).

2. The Kidnapping Conviction

An individual commits kidnapping when he or she "unlawfully removes another . . . a substantial distance from the vicinity where he is found" or "unlawfully confines another for a substantial period" to "facilitate [the] commission of any crime thereafter . . . ." N.J.S.A. 2C:13-1(b)(1). A conviction pursuant to the "substantial distance" theory requires the kidnapping impose an

11

additional risk upon the victim "over and above the risk imposed by a separate crime, and the isolation experienced by the victim because of the defendant's actions." State v. Jackson, 211 N.J. 394, 416 (2012). A conviction based upon "substantial confinement" demands the evidence show the confinement was more than incidental to the underlying crime, with reference to the confinement's duration and an enhanced risk of harm resulting therefrom. Ibid. (quoting State v. La France, 117 N.J. 583, 594 (1990)).

Although these requirements are intended to curb overzealous prosecutors, see ibid. (quoting La France, 117 N.J. at 591), they are not so onerous as to make kidnapping a "'free crime'" to facilitate other violent offenses. Id. at 418 (quoting State v. Brent, 137 N.J. 107, 125 (1994)). Neither theory relies upon a specific quantum of time or distance. State v. Purnell, 394 N.J. Super. 28, 54 (App. Div. 2007); State v. Matarama, 306 N.J. Super. 6, 22 (App. Div. 1997).

Here, the record supports a conviction pursuant to the "substantial confinement" prong of kidnapping. Defendant confined Singh in the convenience store bathroom, where he was handcuffed and gagged for a period of time while patrons came into and left the store, until such a time as defendant was able to kill him. This period of isolation prevented any of the several store

12

patrons that morning from coming to his aid and allowed defendant to escape from the store after killing him. In this regard, Jackson is instructive. Defendant did not simply enter the convenience store, "brandish his weapon, demand and collect money from [the register], and depart the scene, leaving [Singh] in a position to promptly seek help." Jackson, 211 N.J. at 418. Rather, Singh was placed in a vulnerable position, which enabled defendant to kill him more easily before fleeing the scene. A rational factfinder could have found sufficient evidence to support a conviction for kidnapping.

### 3. The Felony Murder Conviction and Resentencing

Because we find the record sufficient to sustain defendant's convictions for both robbery and kidnapping, his arguments regarding felony murder and resentencing are mooted.

### B. The Admission of Defendant's Text Messages to Establish Motive.

Our review of the trial court's evidentiary rulings is limited to an abuse of discretion. State v. Medina, 242 N.J. 397, 412 (2020). We inquire whether the trial court committed a "clear error in judgment." Ibid. (quoting State v. Scott, 229 N.J. 469, 479 (2017)). We decline to substitute our own judgment for that of the trial court unless the ruling "was so wide of the mark that a manifest denial

13

of justice resulted." Ibid. (quoting State v. Brown, 170 N.J. 138, 147 (2001)) (internal quotation marks omitted).

When a defendant fails to object to an alleged trial error, we review the action challenged on appeal for plain error. State v. Gonzalez, 249 N.J. 612, 633 (2022) (quoting State v. Singh, 245 N.J. 1, 13 (2021)). Plain error exists if the action was "clearly capable of producing an unjust result," but "will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached." Ibid. (quoting Singh, 245 N.J. at 13) (internal quotation marks omitted).

Defendant claims the text messages were impermissibly admitted as evidence of prior bad acts pursuant to N.J.R.E. 404(b)(1) because they were introduced to show he was committing "adultery" with another woman while living with his girlfriend. N.J.R.E. 404(b)(1) states "evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition."

Defendant's reliance on N.J.R.E. 404(b)(1) is belied by the record. The texts were not introduced as evidence of defendant's character; they were proffered to establish his motive for the crimes charged. His attempt to

equivocate "infidelity" to his girlfriend as a prior bad act does not merit further discussion. R. 2:11-3(e)(2). Defendant does not provide any legal support to demonstrate infidelity is a crime or constitutes a prior bad act within the ambit of N.J.R.E. 404(b). And such evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b)(2).

Unable to establish the applicability of N.J.R.E. 404(b), defendant must overcome the burden imposed by N.J.R.E. 403. This requires a "strong showing of prejudice to exclude motive evidence." State v. Calleia, 206 N.J. 274, 294 (2011). It is insufficient that the evidence has the capacity to inflame the jury's sensibilities. Ibid. Defendant claims the text messages were prejudicial in that they attempted to reveal his financial circumstances to the jury, relying on State v. Mathis, 47 N.J. 455 (1966). Mathis prevents prosecutors from using generalized class assumptions as evidence of criminality or propensity. Lodzinski, 249 N.J. at 155-56; see also State v. Francisco, 471 N.J. Super. 386, 422 (App. Div. 2022). As the State asserts, the text messages were offered to demonstrate a motive for the robbery, provide insight as to how defendant

planned to obtain money, and provide a deadline as to when Grace could expect the money from defendant.

We discern no abuse of discretion; any prejudice regarding defendant's communications with Grace is far outweighed by the text messages' probative value and did not "divert jurors 'from a reasonable and fair evaluation of the basic issue of guilt or innocence.'" State v. McDuffie, 450 N.J. Super. 554, 574 (App. Div. 2017) (quoting State v. Moore, 122 N.J. 420, 467 (1991)).

C. The Jury Charges.

Because defendant failed to object to the jury instructions we again review for plain error. With respect to the kidnapping charge, defendant asserts the court erred by not instructing the jury on the safe release element of the offense. To determine whether a victim was released in a safe place, the jury must evaluate all the evidence admitted at trial. Model Jury Charges (Criminal), "Kidnapping (N.J.S.A. 2C:13-1(b)(1) to (3))" (rev. Oct. 6, 2014). This includes consideration into:

> (1) [the] age of the victim and any other physical or mental condition of the victim;
> (2) the location, the conditions of the area, and the time of the release;
> (3) the circumstances surrounding the release; and
> (4) any other circumstances that occurred or existed surrounding the release.

A-3195-21

[Ibid.]

The burden is on the State to "prove beyond a reasonable doubt either that the victim was harmed or not released in a safe place prior to apprehension." State v. Cuff, 239 N.J. 231, 338 (2019) (quoting State v. Federico, 103 N.J. 169, 174 (1986)). The State was not required to prove both, ibid., and the jury found, beyond a reasonable doubt, that Singh was harmed. Moreover, the record shows there is no rational basis for the jury to conclude "the State failed to meet its burden to prove that defendant did not 'release' [Singh] 'unharmed and in a safe place' prior to his apprehension." Id. at 342. Singh was found handcuffed and gagged, with his throat slit and his back stabbed twice in a pool of his own blood. Defendant did not present any evidence at trial warranting an instruction on safe release.

D. The Sentence.

Finally, we address defendant's argument that he was improperly sentenced to life without parole because the State failed to allege defendant committed murder by his own conduct, and because the court failed to instruct the jury on that specific triggering element.

Defendant was charged with being the sole cause of Singh's murder on August 16, 2018. The "own conduct" requirement of N.J.S.A. 2C:11-3(b)(4) is

17

intended to distinguish between principal and accomplice for purposes of life without parole. See State v. Cruz, 171 N.J. 419, 426-27 (2002) (quoting State v. Gerald, 113 N.J. 40, 96 (1988)). "Only those murderers whose conviction rests on their status as principals – those who have committed the homicidal act by their own conduct" may face a life sentence without parole. Id. at 427 (quoting Gerald, 113 N.J. at 100). Defendant does not dispute he was the principal of Singh's murder. The indictment did not charge him with murder based on any recognized theory of accomplice liability. See N.J.S.A. 2C:2-6. This jury charge is inapplicable to the facts of this case because defendant does not claim he was aided by an accomplice.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3195-21