274 N.J. Super. 379 (1994)
644 A.2d 149
STATE OF NEW JERSEY, PLAINTIFF,
v.
PETER ARP, DEFENDANT.
Superior Court of New Jersey, Law Division Middlesex County.
Decided March 18, 1994.
*380 Joseph L. Rea, Assistant Prosecutor, for plaintiff.
Scott D. Finckenauer for defendant.
HOFFMAN, J.S.C.
This case raises the issue of whether for the purposes of the kidnapping statute, N.J.S.A. 2C:13-1, a removal or confinement that began lawfully may later become unlawful. This question has not been directly addressed in prior decisions.
The issue arises from a motion filed by the defendant to dismiss the indictment for kidnapping and the corresponding charges of aggravated sexual assault and aggravated criminal sexual contact.
The decision as to whether to dismiss an indictment rests solely within the discretion of the trial court. Since grand juries perform an accusative function and do not determine innocence or guilt, courts very rarely alter their decisions. Indictments are only dismissed if they are "manifestly deficient or palpably defective," State v. Wein, 80 N.J. 491, 501, 404 A.2d 302 (1979), on "the clearest and plainest ground." State v. New Jersey Trade Waste Ass'n, 96 N.J. 8, 18, 472 A.2d 1050 (1984). An indictment that appears sufficient on its face will stand if the State presented at least some evidence to the grand jury as to each element of the prima facie case. State v. Vasky, 218 N.J. Super. 487, 528 A.2d 61 (App.Div. 1987).

*381 I
The facts alleged in the grand jury proceedings are as follows: On March 6, 1993 the defendant called fifteen year old J.A. on the phone and arranged to meet her later in the afternoon in South Brunswick. The two had met the day before, while J.A. was on a school trip. The defendant picked up J.A. in his car and they spent the afternoon and evening visiting friends of J.A. At approximately nine o'clock, the defendant told J.A. that he wanted to leave because he had a long drive and had to work in the morning. They walked over to his car and the defendant began to kiss her. J.A. told him that she was not interested and said that she had to go to the bathroom.
After going to the bathroom in the woods, J.A. voluntarily joined the defendant in his car, and told him that she wanted to go home. Defendant drove off and said that he would take her home. When they reached the development where J.A. lived, he did not take her to her home. Instead, he grabbed her and began to choke her and kiss her. He started to drive around, keeping her in the car with him. Over the next two hours, he grabbed her breast, digitally penetrated her, and forced her to perform fellatio on him. During this period, J.A. repeatedly pleaded to be released, but the defendant kept her in the car, and threatened numerous times to kill her.
At approximately midnight, J.A. told the defendant that she felt nauseous and had to urinate. Defendant again threatened to kill her, and said that she could leave the car to relieve herself only if she removed all of her clothes. Defendant tore her clothes off and allowed her to open the door. He grabbed hold of her, but J.A. managed to break loose, and ran naked to the nearest house for help.

II
A kidnapping charge under N.J.S.A. 2C:13-1(b) requires a showing that the victim was unlawfully removed a "substantial *382 distance" from the vicinity where he or she was found, or was unlawfully confined for a "substantial period" for the purpose of either 1) facilitating the commission of a crime, or 2) to inflict bodily injury or terrorize another. Under subparagraph (d) of the statute, unlawful removal or confinement is defined as that which is accomplished by force, threat or deception.
In the instant case, the defense contends that the State failed to establish that J.A. was unlawfully removed a substantial distance, or that she was unlawfully confined beyond the confinement inherent to the commission of the underlying offense. The defense argues that J.A. agreed to ride around with the defendant, and voluntarily re-entered the car with him after visiting her friends. At that point, the removal from the vicinity and confinement in the car were lawful. The defense contends that they remained lawful until the alleged assault began, at which point they were inherent to the crime itself, and do not provide a basis for a separate charge. The question then, is whether the removal and confinement became unlawful during the course of events, and if so, did the defendant's actions constitute a separate crime under N.J.S.A. 2C:13-1(b).[1]
J.A. gave the following testimony as to the sequence of events after they arrived at the area where she lived:
[W]e got to the development where I live, but he never went to my house. He then started to kiss me and grab me and choke me. And at that time I was scared and I pleaded with him to stop. And then he started getting violent.
Q: Did you tell him that you wanted to get out of the car?
A: Yes.
At the point when the defendant used force on J.A. and prevented her from exiting the car, the confinement became unlawful. By proceeding to drive off with J.A. imprisoned in the car, the element of unlawful removal was met.
*383 The remaining issue is whether the removal and confinement were distinct from that inherent in the crime itself. In State v. La France, 117 N.J. 583, 569 A.2d 1308 (1990), the Court ruled that to determine whether confinement was for a substantial period requires an examination not only of the duration of time, but also whether the isolation enhanced the risk of harm to the victim. In La France, the defendant had tied up one victim, robbed him and then sexually assaulted his wife. The Court ruled that binding up the husband in order to facilitate the other crimes increased the risk of harm to, as well as the terror of, each victim, and thus constituted a kidnapping regardless of the period of time that passed.
La France was based on a similar analysis of the removal element in the earlier case of State v. Masino, 94 N.J. 436, 466 A.2d 955 (1983). In Masino, the Court held that "substantial distance" refers to more than just a matter of linear measurement. While there is no threshold of minimum distance for asportation, it must be more than merely incidental to the underlying crime. The relevant inquiry is whether the asportation increased the vulnerability of the victim, and thereby exposed him or her to a greater risk of harm.
I find that both the confinement and removal elements are met in the instant case. According to the testimony, J.A. was confined in an automobile, which isolated her from the usual protection of society. Like the victims in La France, she was unable to leave of her own free will or to summon assistance. That same automobile then served as the means of transporting her away from her home and help, thereby increasing her vulnerability and the risk of harm. Defendant had a greater opportunity to force J.A. to perform sexual acts, since she was trapped alone with him over the course of two hours during which he could threaten her and use physical force with impunity.
Defendant's intention to confine J.A. in the car so that she could not escape or seek help is apparent from the fact that he allegedly forced her to remove her clothing before going out to urinate. *384 Presumably he believed that this would force her to return to the car. A jury could find that confining her in the vehicle served to facilitate the alleged sexual assault, and was not merely incidental to it.

III
The situation is distinct from that in State v. Tronchin, 223 N.J. Super. 586, 539 A.2d 330 (App.Div. 1988). In Tronchin, the Appellate Division stated that "where an offender entices a victim into a car by deception, transports the victim to a remote place without the opportunity for the victim's escape and commits sexual assault, all the elements of kidnapping may be established." Id. at 594, 539 A.2d 330. However, the court found that under the facts before it, those elements had not been established. The victim in Tronchin had accepted a ride home from the defendant, and then agreed to drive around with him for a time. She testified that she had not been afraid when he took her to an unknown area, and it was only after they had left the car and walked around that the assault occurred. The removal was not unlawful, and the assault which occurred was distinct from it. In the instant case, the defendant's use of force and the function of the car in trapping and transporting J.A. for a period of time leading up to the alleged sexual assault directly establish the elements of kidnapping.
For the reasons outlined above, the defendant's motion to dismiss the kidnapping charge, and the associated charges of aggravated sexual assault and aggravated criminal sexual contact is denied.
NOTES
[1] The legal posture resembles that of the pre-code crime of embezzlement, in which money is lawfully entrusted to another but then unlawfully taken by that person.