**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3775-16T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JUAN E. CRUZ-PENA,

      Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**June 21, 2019**

**APPELLATE DIVISION**

Argued May 6, 2019 – Decided June 21, 2019

Before Judges Haas, Sumners and Susswein.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 14-11-0932.

Tamar Yael Lerer, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Joshua David Sanders, Assistant Deputy Public Defender, of counsel and on the brief).

Valeria Dominguez, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Sarah Lichter, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

SUSSWEIN, J.S.C. (temporarily assigned).

This case arises from a violent criminal episode during which defendant Juan Cruz-Pena subjected his victim to four to five hours of uninterrupted sexual abuse. Defendant was acquitted at trial of the most serious sexual offense with which he was charged – first-degree aggravated sexual assault – but was found guilty of first-degree kidnapping, third-degree aggravated criminal sexual contact, and third-degree aggravated assault. He appeals only from his kidnapping conviction, claiming that the victim's confinement was merely incidental to the underlying sex crime and, therefore, the kidnapping charge should not have been submitted to the jury. We agree.

The record clearly shows that the victim's confinement was inherent in the sexual abuse defendant inflicted upon her. The force and threat of force defendant used to restrain the victim were the same force and threats he used to accomplish the sex crime with which he was separately charged. Furthermore, the risk of harm the victim faced throughout her hours-long ordeal, while substantial, was not independent of the danger posed by defendant's continuous sexual attack. We therefore conclude that in accordance with authoritative precedent interpreting the New Jersey Code of Criminal Justice, N.J.S.A. 2C:13-1(b), the kidnapping charge should not have been submitted to the jury.

A-3775-16T3

I.

We derive the following facts from the evidence presented by the State at trial. In the early morning hours of May 22, 2014, C.M.[1] was walking along Van Houten Street in Paterson, New Jersey, when she saw her friend, Lillian, on a covered porch of an abandoned house. Lillian was talking to two men that C.M. did not recognize. They were later identified as defendant and co-defendant Daniel Ortiz.[2] C.M. voluntarily came up on the porch and joined the three individuals in conversation. At some point, C.M. gave Lillian sixteen dollars and dispatched her to purchase heroin and crack cocaine. While waiting for Lillian to return with the drugs, C.M. and defendant negotiated a deal for C.M. to provide oral sex in exchange for twenty dollars. When Lillian returned, C.M. and Lillian ingested the drugs. Soon after, Lillian left a second time to purchase more drugs, this time with money supplied by defendant. She never returned.

When C.M. realized that Lillian was not coming back, she attempted to leave the porch. Defendant told her that she could not leave. He demanded that she reimburse him for the money he had given to Lillian to purchase drugs, and

---

[1] We use initials for the victim and a pseudonym for her friend on the porch to protect their identities.

[2] Ortiz's case was severed and he is not a party to this appeal.

he punched C.M. in the face, causing her head to slam violently into the wall. Defendant then forced C.M. to perform fellatio on him, sodomized her, and vaginally penetrated[3] her with his penis.[4] Throughout the extended encounter, the sexual attack alternated between oral sex and vaginal/anal penetration. C.M., who weighs less than 100 pounds, repeatedly pleaded for defendant to stop as she tried to squirm and dodge his advances. She testified that he held a box cutter knife to her back, forcing her to comply out of fear.[5] At one point, defendant became irritated because C.M. was bleeding on him, and he punched

---

[3] For purposes of deciding whether the kidnapping charge should have been submitted to the jury, it does not matter that defendant was acquitted of the first-degree aggravated sexual assault offense and was convicted instead of a lesser-included offense of aggravated criminal sexual contact. In determining whether, for example, the force defendant used to commit the continuous sexual abuse was the same force that was used to confine the victim, we apply the standard used in deciding a motion for acquittal and give the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony. See State v. Dekowski, 218 N.J. 596, 608 (2014).

[4] In her summation to the jury, the trial prosecutor offered an explanation, based on the trial evidence, for why the continuous sexual attack cycled between vaginal and anal penetration over the course of several hours. The prosecutor argued, "[h]e forces her to submit to him penetrating her vagina, penetrating her anus, over and over for hours. Why for hours? Because [C.M.] testified the defendant sniffed cocaine, and in her experience when a man takes cocaine he cannot maintain an erection. Think about that detail. Hours and hours until it starts getting light outside – 5, 5:30 in the morning."

[5] We note that the jury acquitted defendant of all weapons-related charges. See footnote 3.

4

her in the face a second time. He also directed Ortiz to join him in sodomizing C.M. for about five minutes.

The sexual abuse continued unabated until one of C.M.'s friends walked by the abandoned house and saw the victim on the porch engaged in sexual activity with defendant. C.M. mouthed the words "help me" to her friend, who then intervened, affording C.M. an opportunity to flee from the porch. C.M. went to a nearby gas station where she called the police.

In November 2014, a grand jury returned an indictment against defendant concerning this incident. The indictment charged defendant with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(6) (count one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count three); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four); fourth-degree possession of a weapon, N.J.S.A. 2C:39-5(d) (count five); first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1) and N.J.S.A. 2C:13-1(b)(2) (count six); and first-degree robbery, N.J.S.A. 2C:15-1(a)(1) and N.J.S.A. 2C:15-1(a)(2) (count seven).

A trial was held in the summer of 2016, after which the jury convicted defendant of first-degree kidnapping. He was acquitted of first-degree aggravated sexual assault, but was found guilty of the lesser-included offense of

5

third-degree aggravated criminal sexual contact.  He also was acquitted of second-degree aggravated assault, but was found guilty of the lesser-included offense of third-degree aggravated assault.  The jury acquitted defendant of the first-degree robbery charge, the aggravated assault charge in count three, and both weapons offenses.

On February 13, 2017, defendant appeared for sentencing before the judge who presided over the trial.  The court found aggravating factors one, N.J.S.A. 2C:44-1(a)(1) (the nature and circumstances of the offense and the actor's role therein, including whether it was committed in an especially heinous, cruel, or depraved manner); two, N.J.S.A. 2C:44-1(a)(2) (the gravity and seriousness of the harm inflicted on the victim, including whether the defendant knew or reasonably should have known that the victim was particularly vulnerable or incapable of exercising normal physical or mental power of resistance); three, N.J.S.A. 2C:44-1(a)(3) (the risk of committing another offense); six, N.J.S.A. 2C:44-1(a)(6) (the extent of defendant's prior record); and nine, N.J.S.A. 2C:44-1(a)(9) (the need for deterring the defendant and others). The court found no mitigating factors.  The trial judge sentenced defendant on the kidnapping conviction to a twenty-three year prison term, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.  The court imposed five-year "flat" prison terms on both the aggravated criminal sexual contact and aggravated assault

convictions.  All three prison terms were ordered to be served concurrently.  The court also ordered defendant to a term of parole supervision for life, and ordered defendant to register under Megan's Law as a sex offender.

On appeal, defendant now raises the following contentions:

POINT I: THE CRIME OF KIDNAPPING WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE BECAUSE THE CONFINEMENT WAS INCIDENTAL TO THE OTHER CRIMES; THEREFORE, THE TRIAL COURT SHOULD HAVE GRANTED THE MOTION FOR A JUDGMENT OF ACQUITTAL ON THAT CHARGE.

POINT II: [DEFENDANT]'S SENTENCE IS EXCESSIVE, UNDULY PUNITIVE, AND MUST BE REDUCED.

## II.

We first consider the legal principles governing this appeal, beginning with the standard of review that applies.  During trial, defendant made a generic motion for a judgment of acquittal, contending that the State had failed "to prove a prima facie case as to all of the elements and all of the counts listed in the indictment."[6]  Defendant did not argue that he should be acquitted of the

---

[6] The State urges us to affirm the kidnapping conviction because the trial court instructed the jury in accordance with the model kidnapping jury charge, which accurately recites the legal principles that explain what constitutes confinement for purposes of the kidnapping offense.  The issue now before us, however, is not whether the jury was properly instructed as to the law, but rather whether the trial court should have allowed the jury to consider the kidnapping count.

7

kidnapping charge on the specific grounds that the victim's confinement was incidental to the other underlying substantive offenses. Defendant, in other words, did not raise the same legal argument at trial that he now makes on appeal. Accordingly, we analyze the issue before us under the plain error standard. R. 2:10-1; State v. Wright, 155 N.J. Super. 549 (App. Div. 1978).

Our review of the denial of a motion for acquittal is de novo. State v. Dekowski, 218 N.J. 596, 608 (2014). We use "the same standard as the trial court in determining whether a judgment of acquittal was warranted." State v. Ellis, 424 N.J. Super. 267, 273 (App. Div. 2012). In our review, we assess "whether the State presented sufficient evidence to defeat an acquittal motion." Dekowski, 218 N.J. at 608. "We must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Ibid. (quoting State v. Williams, 218 N.J. 576, 594 (2014)); see also State v. Reyes, 50 N.J, 454, 458-59 (1967). Like the trial court, we "must consider only the existence of

_____

The same circumstance was presented in State v. Lyles, 291 N.J. Super. 517 (App. Div. 1996), where we acknowledged that the jury had been instructed in accordance with the model kidnapping charge, but nonetheless held "that crime [kidnapping] never should have gone to the jury. The evidence adduced by the State did not support it." Id. at 528.

such evidence, not its 'worth, nature, or extent.'"  State v. Brooks, 366 N.J. Super. 447, 453 (App. Div. 2004) (quoting State v. Kluber, 130 N.J. Super. 336, 342 (1974)).

We turn next to defendant's substantive legal argument and the foundational principles of law that pertain specifically to prosecutions for kidnapping.  The statute that defines the kidnapping offense, N.J.S.A. 2C:13-1(b), provides in pertinent part that:

> A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes:
>
> (1) To facilitate commission of any crime or flight thereafter;
>
> (2) To inflict bodily injury or to terrorize the victim or another . . . .

Defendant's challenge to his first-degree kidnapping conviction requires us to review how the material element of "confinement" has been interpreted and applied in cases where a defendant is charged with other offenses occurring at the same time as the alleged kidnapping.  We first note by way of general background that there are two basic kidnapping scenarios.  In one, the kidnapper seizes the victim and removes him or her to another place – a process known in common law as "asportation."  The other form of kidnapping occurs when the

9

offender confines the victim for a substantial period in the place where he or she is found. The case before us involves the latter type of kidnapping; the State did not allege or prove that defendant moved C.M. a substantial distance from the vicinity where she was found. Indeed, in this case, there was no movement at all as defendant did not remove C.M. from the porch that she had entered voluntarily. We thus focus our attention on what it means to confine a victim for a substantial period.

In State v. Masino, 94 N.J. 436 (1983), the Supreme Court carefully traced the origins and history of the kidnapping statute from its roots in the common law to its refinement in the Model Penal Code and to its eventual codification in the New Jersey Code of Criminal Justice. Id. at 440-46. In State v. LaFrance, 117 N.J. 583 (1990), the Court had further opportunity to address the unlawful confinement alternate to the asportation element that had been required under the common law and New Jersey's predecessor kidnapping statute. The Court expounded on Masino and emphasized that "not every movement or confinement of a victim is a kidnapping." Id. at 586. Importantly for purposes of this appeal, the Court in LaFrance held that N.J.S.A. 2C:13-1(b) requires proof of movement or restraint "that is not merely incidental to the underlying substantive crime." Id. at 591. The Court added that in determining whether confinement in a particular case is incidental to the underlying substantive crime, we should

10

consider not only whether the confinement is inherent in the separate underlying offense, but also whether the circumstances of the confinement created a significant danger to the victim independent of that posed by the separate offense. Id. at 587-88.

The Court also explained what constitutes a "substantial period" for purposes of the kidnapping statute, noting that:

> [O]ne is confined for a substantial period if that confinement 'is criminally significant in the sense of being more than merely incidental to the underlying crime,' and that determination is made with reference not only to the duration of the confinement, but also to the 'enhanced risk of harm resulting from the [confinement] and isolation of the victim [or others]. That enhanced risk must not be trivial.'
>
> [Id. at 594 (quoting State v. Masino, 94 N.J. at 447)].

Accordingly, we must look beyond the length of confinement as measured in seconds, minutes, or, in this instance, hours. As we noted in State v. Soto, 340 N.J. Super. 47 (App. Div. 2001), "[t]he cases on confinement focus on the enhanced risk of harm rather than the duration of confinement." Id. at 74. "It is the enhanced risk of harm that makes the confinement more than merely 'ancillary to the crime that was its purpose.'" Ibid. (quoting State v. Lyles, 291 N.J. Super. 517, 526 (App. Div. 1996)).

In Soto, we held that the evidence did not support a conviction for kidnapping in a case where the victim's mouth had been duct-taped and he was

11

bludgeoned to death during a struggle.  Id. at 75.  We found that there was neither confinement for a substantial period, nor anything that enhanced the risk to the victim.  Ibid.  "Whatever brief period of time [the victim] may have been confined was merely incidental to the other crimes for which defendant was convicted:  the burglary, robbery, aggravated assault, and felony murder."  Ibid. We thus concluded that it was error to submit the kidnapping charge to the jury.

Other cases have also focused on whether the offense conduct enhanced the risk of harm beyond that inherent in the underlying crime.  For example, in State v. Bryant, 217 N.J. Super. 72, 81-82 (App. Div. 1987), the act of binding and gagging the elderly burglary victims justified a kidnapping conviction only because the victims were left in that condition after the defendant's fled, leaving them more vulnerable to harm after the crime had been completed.  See also State v. Denmon, 347 N.J. Super. 457, 465-66 (App. Div. 2002) (handcuffing robbery victims to each other after robbers fled increased the risk of injury).

The Supreme Court's decision in State v. Jackson, 211 N.J. 394 (2012), provides further guidance on how to apply the fundamental principles recognized in LaFrance.  In Jackson, the Court held there was sufficient evidence to support the jury verdict with respect to both the "substantial distance" and "substantial confinement" elements of N.J.S.A. 2C:13-1(b), because the defendant's constraints on his victim "went beyond the acts that were

12

necessary to accomplish the armed robbery with which he was separately charged." Id. at 418. In that case, the defendant did not simply enter the taxi, brandish his weapon, demand and collect money from the victim, and depart the scene leaving the victim in a position to promptly seek help. Id. at 398. Rather, the defendant isolated the victim by ordering the victim to drive him to a location blocks away, thereby exposing the victim to an enhanced risk of harm. Id. at 418-19. As the Court explained,

> Because defendant remained in the taxi after the robbery was over and insisted that [the victim] drive him to Broadway, he kept the victim in an isolated and vulnerable position. Defendant, brandishing a gun, forced [the victim] to operate his taxi for several minutes, through city streets, exposing him to the risk of a serious accident, injury or death by virtue of a desperate attempt to escape, or the danger of confrontation between defendant and law enforcement. The "linear distance" travelled was considerable, but the increased risk of harm imposed on the victim was greater still.
>
> [Id. at 419].

Of particular importance to the case before us in this appeal, the Court added that, "[t]he same considerations support defendant's conviction under the 'substantial confinement' standard of N.J.S.A. 2C:13-1(b). The isolation and vulnerability experienced by the victim in this case was not coextensive with the armed robbery." Ibid.

13

The Law Division reached a similar conclusion in State v. Arp, 274 N.J. Super. 379 (Law Div. 1994), where the victim voluntarily entered the defendant's car. After a time, the defendant transported her in the car and then sexually assaulted her and used force on her to prevent her from exiting. As the trial judge noted, "[t]hat same automobile then served as a means of transporting her away from her home and help, thereby increasing her vulnerability and the risk of harm." Id. at 383.

We reached a different result in Lyles, where we concluded that the force or coercion used by the defendant to commit the aggravated sexual assault did not put the victim at risk of any other more serious crime, thus providing insufficient evidence to support a kidnapping conviction. 291 N.J. Super. at 527-29.

III.

We now turn to the application of the foregoing legal principles to the evidence adduced by the State at trial. The victim initially entered the covered porch voluntarily. It was only after C.M. realized that Lillian would not return with more drugs that she decided to leave. At that point, defendant threatened her and struck her violently. That was the moment that involuntary confinement began for purposes of our kidnapping analysis.

14

What followed was a protracted sequence of violent, nonconsensual sexual acts spanning the course of four to five hours. This series of sex acts and physical assaults were integral parts of a single course of uninterrupted criminal conduct. We note in this regard that count one of the indictment, which charged defendant with first-degree aggravated sexual assault, alleged that the defendant "did commit an act of aggravated sexual assault upon [C.M], by performing an act of sexual penetration, with the use of physical force or coercion . . . ." (Emphasis added). The theory of the prosecution as set forth in the indictment is consistent with the notion that the alleged sexual predation in this case constituted a single continuous criminal episode spanning several hours. That is significant because we need to determine whether the acts constituting the alleged kidnapping are coextensive and coterminous with the acts constituting the alleged sexual assault.

Putting aside the prosecution theory set forth in the charging instrument, we turn our attention to the actual proofs the State presented at trial. We have reviewed the trial record closely, focusing especially on the victim's testimony, for any evidence that might reasonably suggest that C.M.'s confinement was in any respect independent of the sexual attack that defendant inflicted upon her, or else exposed her to a greater risk of harm than the risk inherent in the sexual and physical abuse she endured throughout this episode. Even when viewing

15

the evidence in the light most favorable to the State, we find nothing in the record that refutes defendant's contention that C.M.'s confinement was merely incidental to the sex crime she endured.

First, there is no evidence of any interruption in the ongoing sexual abuse during the period of confinement. In other words, so far as the trial record shows, there was never a point in time when C.M. was being restrained but was not being sexually abused. That circumstance supports the conclusion that the same force and threats were used to confine her and to sexually abuse her.

Furthermore, defendant never moved the victim off the porch. We recognize that the State did not present this case as a "substantial distance" type of kidnapping. Even so, the absence of any displacement is relevant to the critical question whether defendant did anything to isolate the victim or otherwise render her more vulnerable to harm. See, e.g., State v. Purnell, 394 N.J. Super. 28, 53 (App. Div. 2007) (removing the victim up an additional flight of stairs was not merely incidental to the underlying sexual crimes because it exposed her to an increased risk of harm).

The outcome of this appeal might well be different if, for example, defendant had moved C.M. off the porch and into the interior of the abandoned house. Forcing the victim behind closed doors, even if that entailed moving her only a few feet, would have made her more vulnerable and less likely to be

16

rescued. However, in this instance, defendant did nothing to isolate her by moving her out of public view from the sidewalk or street. Indeed, even as defendant was actively engaged in nonconsensual sexual activity with the victim, she was able to summon aid from her friend who walked by the abandoned house by silently mouthing the words "help me." This shows that the porch – and thus the criminal conduct committed on the porch – was exposed to public view and was close enough to the street that the passerby could recognize C.M., see that she was engaged in sexual activity, and correctly interpret her silent plea for help.

The State urges us to rely on Arp, 274 N.J. Super. 379. In that case, the victim voluntarily entered the defendant's vehicle. After a time, the defendant sexually assaulted her and used force on her to prevent her from exiting. The present case thus is similar to Arp in that what started as a consensual encounter eventually transformed into a nonconsensual sexual assault. Arp is distinguishable, however, because the defendant in that case transported the victim in the car "away from her home and help, thereby increasing her vulnerability and the risk of harm." Id. at 383.

We next consider whether there is any legal significance in the fact that defendant cut off C.M.'s outer clothing, and whether that act exposed her to a greater risk of harm than that inherent in the underlying sex crime. It reasonably

17

appears, however, that this act of force was done as part of and incident to the sexual abuse. We take note that the State's brief describes this circumstance as follows: "He [defendant] then stripped [C.M.] of her clothing and forced her to perform oral sex on him." The State has not argued that defendant disrobed her for a purpose independent of the sexual abuse, such as to make it more difficult for her to escape or seek help.

The circumstances of the removal of C.M.'s clothing is thus distinguishable from the facts in Arp. In that case, the trial court observed that, "[d]efendant's intention to confine [the victim] in the car so that she could not escape or seek help is apparent from the fact that he allegedly forced her to remove her clothing before going out to urinate. Presumably, he believed that this would force her to return to the car." 274 N.J. Super. at 383-84. In the present case, in contrast, defendant cut off the victim's dress during and as part of the sexual abuse. There is no evidence that he ever permitted her to leave the porch to relieve herself or for any other reason. We therefore conclude that on the facts of the case before us, the act of stripping off C.M.'s dress did not convert the alleged rape into a kidnapping.

So too, C.M. was never bound, gagged, and left behind by her assailants. So far as the trial record indicates, defendant and co-defendant Ortiz never left the porch before C.M. finally escaped, and thus they never left C.M. behind in

18

a vulnerable condition as occurred in <u>Bryant</u> and <u>Denmon</u>. Rather, the sexual predation continued right up to the moment C.M. fled from the porch with the assistance of the passerby who came to her rescue.

In sum, considering all of the evidence adduced at trial, it is clear to us that the force and threat of force defendant applied against C.M. to restrain her movements was indistinguishable from the force and threats he used to commit the sexual crime he was separately charged with. To be sure, throughout her extended confinement, C.M. remained at great risk of harm, but that risk was of further sexual and physical abuse by defendant. The danger she faced from confinement, in other words, was not independent of the danger inherent in the underlying sex crime. While C.M. remained vulnerable to repeated, indeed incessant criminal attack throughout her hours-long ordeal, her isolation and vulnerability was coextensive and coterminous with the sexual abuse. There simply were no acts committed by defendant to restrain the victim that went beyond the acts necessary to accomplish the sex crime with which defendant was separately charged. <u>See, e.g.</u>, <u>Jackson</u>, 211 N.J. at 418. For that reason, we are constrained by the binding precedents interpreting N.J.S.A. 2C:13-1(b) to conclude that the State did not produce sufficient evidence for the kidnapping charge to be considered by the jury, and therefore, the trial court erred by not entering a verdict of acquittal on that charge at the end of the State's case.

19

IV.

Defendant also contends that his sentence was excessive. We need not address that issue in view of the fact that his conviction for first-degree kidnapping must be vacated. We reverse the defendant's kidnapping conviction and remand to enter a judgment of acquittal on the kidnapping count. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3775-16T3