SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

## State v. Juan E. Cruz-Pena (A-3-19) (083177)

**Argued April 27, 2020 -- Decided August 4, 2020**

**ALBIN, J., writing for the Court.**

The Court considers defendant Juan E. Cruz-Pena's jury conviction of first-degree kidnapping for confining C.M. for a "substantial period" for the purpose of committing various crimes against her. The Appellate Division reversed the kidnapping conviction, concluding that C.M.'s captivity did not fall within the meaning of the kidnapping statute because her "confinement was merely incidental to the underlying sex crime." 459 N.J. Super. 513, 516 (App. Div. 2019) (emphasis added).

Defendant was convicted of first-degree kidnapping, third-degree aggravated criminal sexual contact, and third-degree aggravated assault, and was sentenced, in the aggregate, to twenty-three years in state prison, subject to the No Early Release Act, for his crimes against C.M. during the early morning hours of May 22, 2014.

At around 2:00 a.m. that day, C.M., a sex worker, was walking in Paterson when she noticed on the covered porch of an abandoned house a sex-worker friend with two men C.M. did not know, defendant and Daniel Ortiz. C.M. joined the group on the porch. Defendant gave C.M.'s friend money to buy the men cocaine. When the friend did not return, C.M. attempted to leave.

Defendant punched her in the face, sending her ninety-pound body "flying into the wall." Defendant then held a knife to C.M.'s neck and forced her to perform oral sex. For the next several hours, despite her pleas, defendant compelled her at knifepoint to perform various sexual acts and repeatedly penetrated her vaginally and anally. Angered that C.M. was bleeding all over him, defendant punched her in the face again, leading her to believe her nose was broken. Defendant further terrified C.M. by cutting off her dress and telling her that he was going to be her "pimp" and "come back every night." While C.M. was on her knees and forced to perform oral sex on defendant, Ortiz, at defendant's invitation, anally penetrated C.M. for about five minutes. Held against her will at knifepoint, and by brute and violent force, C.M. endured the cycle of horrors for hours until a woman from the neighborhood passed by and yelled out, at which point C.M. fled as defendant chased the women. C.M. reached a gas station, where an attendant called the police.

1

C.M. gave a description of her attackers and later identified defendant and Ortiz.

After his motion for a judgment of acquittal was denied and he was convicted, defendant appealed, challenging his kidnapping conviction and sentence. The Appellate Division reversed the kidnapping conviction and therefore did not address defendant's sentence. 459 N.J. Super. at 528. The Court granted the State's petition for certification, 239 N.J. 398 (2019), and its motion to stay the judgment of the Appellate Division.

**HELD:** The language of the kidnapping statute, along with the case law construing that language, must be read in a sensible manner and not taken to an illogical conclusion. Holding a victim in captivity for a period of four to five hours, while assaulting and sexually abusing her, satisfies the "substantial period" requirement of the kidnapping statute -- even if the length of the confinement is co-extensive with the continuous sexual and physical abuse of the victim. In addition, the Court cannot find that, as a matter of law, the terrifying four-to-five-hour period of C.M.'s confinement was "merely incidental" to the sexual violence committed against her. There is no basis to disturb the jury's verdict.

1. N.J.S.A. 2C:13-1(b) provides that "[a] person is guilty of kidnapping if he unlawfully removes another . . . a substantial distance from the vicinity where he is found, or . . . unlawfully confines another for a substantial period" with the purpose "(1) [t]o facilitate commission of any crime or flight thereafter [or] (2) [t]o inflict bodily injury on or to terrorize the victim or another." (emphasis added). The kidnapping statute also provides that "[a] removal or confinement is unlawful . . . if it is accomplished by force, threat, or deception." N.J.S.A. 2C:13-1(d) (emphasis added). Additionally, unless the defendant "releases the victim unharmed and in a safe place prior to apprehension," kidnapping is a crime of the first degree. N.J.S.A. 2C:13-1(c)(1). First-degree kidnapping is one of the most serious crimes listed in the New Jersey Code of Criminal Justice. (pp. 14-15)

2. The effort to define and limit the scope of the kidnapping statute is evident in the statutory language chosen by the Legislature, requiring that a conviction be premised on removing a victim a "substantial distance" or confining a victim "for a substantial period." That statutory terminology is not self-defining, and the Court has provided guiding principles. A kidnapping is criminal conduct that is "not ordinarily inherent in the underlying criminal conduct itself" or "merely incidental to the underlying crimes." State v. La France, 117 N.J. 583, 589-90 (1990). The substantial-distance-removal and substantial-period-of-confinement requirements address a scenario where a defendant "isolates the victim and exposes him or her to an increased risk of harm." See State v. Masino, 94 N.J. 436, 445 (1983). Indeed, "the legislature realized that the risk of harm attendant upon isolation is the principal danger of the crime." Id. at 446. The "enhanced risk of harm," however, "must not be trivial." Id. at 447; accord La France, 117 N.J. at 594. Removing a victim a substantial distance or confining a victim for a substantial period are qualitative terms, for sure, but they are also quantitative terms. (pp. 15-19)

2

3. A series of cases illustrates the application of the principles discussed. In Masino, the defendant pulled his victim from her car, beat her, dragged her across a street, through trees, and down to a pond where he plunged her head in the water, sexually assaulted her, then took her clothes and left. Id. at 437-38. Although the linear distance that the defendant removed the victim from the car to the pond may not have been far in absolute terms, it was "more than merely incidental to the underlying crime" because the distance travelled isolated the victim and enhanced the risk of harm to her. See id. at 446-47. The Court upheld the kidnapping conviction but warned prosecutors that the decision should not be read "as encouragement for use of a kidnapping charge as some sort of 'bonus' count in an indictment." Id. at 447-48. In La France, the Court upheld a jury verdict of first-degree kidnapping by confinement when a burglar had a husband tied up while the burglar sexually assaulted his pregnant wife until the husband freed himself and subdued the burglar, about thirty minutes later. 117 N.J. at 585, 591-93. The Court determined that the thirty-minute confinement was "more than merely incidental to the underlying crime," given the psychological injury caused by the sordid acts committed against the couple "and the inability of the isolated husband to avert the terror to his wife and injury to her and their unborn child." Id. at 593-94. And, in State v. Jackson, the Court found that the State had presented sufficient evidence to support either a substantial-distance-removal kidnapping or a substantial-period-confinement kidnapping when a defendant entered a taxi, robbed the driver at gunpoint, ordered him to drive to a specific location about fifteen blocks away, and then fled. 211 N.J. 394, 400-02, 418 (2012). The Court concluded that the victim was "exposed to a substantially extended confinement and a substantially increased risk" that "was not coextensive with the armed robbery." Id. at 419. (pp. 19-21)

4. Applying those principles, the Court finds that this case represents a classic example of kidnapping by confinement. This case meets all of the statutory criteria for first-degree kidnapping: defendant confined C.M. for a substantial period with the purpose to facilitate the commission of sexual crimes and aggravated assault and to terrorize C.M., see N.J.S.A. 2C:13-1(b); he accomplished the confinement by force and threat, see N.J.S.A. 2C:13-1(d); and he did not release C.M. unharmed and in a safe place before his apprehension, see N.J.S.A. 2C:13-1(c)(1). The concern expressed in Masino about the potential for prosecutorial overreach in transposing a kidnapping charge over a substantive crime is not present here. See Masino, 94 N.J. at 448. The evidence in this case, viewed in the light most favorable to the State, clearly established an ample basis for a reasonable jury to return a verdict of first-degree kidnapping. (pp. 21-24)

**REVERSED. Defendant's kidnapping conviction is REINSTATED and the matter is REMANDED to the Appellate Division.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-3 September Term 2019

083177

State of New Jersey,

Plaintiff-Appellant,

v.

Juan E. Cruz-Pena,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
459 N.J. Super. 513 (App. Div. 2019).

| Argued | Decided |
| --- | --- |
| April 27, 2020 | August 4, 2020 |

Valeria Dominguez, Deputy Attorney General, argued
the cause for appellant (Gurbir S. Grewal, Attorney
General, attorney; Valeria Dominguez, of counsel and
on the briefs).

Marcia Blum, Assistant Deputy Public Defender,
argued the cause for respondent (Joseph E. Krakora,
Public Defender, attorney; Marcia Blum and Tamar Y.
Lerer, Assistant Deputy Public Defender, of counsel
and on the briefs).

JUSTICE ALBIN delivered the opinion of the Court.

A jury convicted defendant Juan E. Cruz-Pena of first-degree kidnapping for confining C.M. for a "substantial period" for the purpose of committing various crimes against her. See N.J.S.A. 2C:13-1(b). To support the kidnapping charge, the State presented evidence that defendant held C.M. captive on the porch of an abandoned building and, over a four-to-five-hour period, physically assaulted, threatened, and repeatedly sexually abused her -- and induced a companion to commit a sexual offense against her.

The Appellate Division held that the trial court erred by not entering a judgment of acquittal on the kidnapping charge and remanded to vacate the kidnapping conviction. State v. Cruz-Pena, 459 N.J. Super. 513, 516, 528 (App. Div. 2019). The Appellate Division concluded that C.M.'s captivity did not fall within the meaning of the kidnapping statute because her "confinement was merely incidental to the underlying sex crime." Id. at 516, 521-26 (emphasis added). It reasoned that the confinement was "merely incidental" because the sexual abuse of C.M. constituted "a single course of uninterrupted criminal conduct" that occurred during her confinement. Id. at 525. In the Appellate Division's view, "the victim's confinement was inherent in the sexual abuse defendant inflicted upon her." Id. at 516.

We now reverse. The language of the kidnapping statute, along with the case law construing that language, must be read in a sensible manner and not

2

taken to an illogical conclusion. Holding a victim in captivity for a period of four to five hours, while sexually abusing and assaulting her, satisfies the "substantial period" requirement of the kidnapping statute -- even if the length of the confinement is co-extensive with the continuous sexual and physical abuse of the victim. In addition, we cannot find that, as a matter of law, the terrifying four-to-five-hour period of C.M.'s confinement was "merely incidental" to the sexual violence committed against her. Based on the evidence presented at trial, the jury was entitled to make highly fact-sensitive determinations in deciding whether C.M. was confined for a "substantial period" during the repeated sexual attacks and physical assaults against her.

A court should not enter a judgment of acquittal based on insufficiency of evidence unless, viewing the record in the light most favorable to the State, no reasonable juror could have returned a finding of guilt. Ample evidence supported submitting the kidnapping charge to the jury.

We find that there is no basis to disturb the jury's verdict and, accordingly, reinstate defendant's kidnapping conviction. We remand to the Appellate Division to address the unresolved sentencing issue.

I.

A.

Defendant was charged in a multi-count indictment with first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1); first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(6); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and first-degree robbery, N.J.S.A. 2C:15-1(a)(1) and (2).[1]

Defendant was tried before a jury in July and August 2016. At the close of the State's case, the court denied defendant's motion for a judgment of acquittal on all charges in the indictment. The jury returned a verdict of guilty to the charges of first-degree kidnapping; third-degree aggravated criminal sexual contact, a lesser offense of aggravated sexual assault; and third-degree aggravated assault. Defendant was acquitted on all other counts in the indictment.

The trial court sentenced defendant on the kidnapping conviction to twenty-three years in state prison, subject to the No Early Release Act,

---

[1] Co-defendant Daniel Ortiz was charged on all counts in the indictment, except for the second-degree aggravated-assault charge. His case was severed from defendant's.

N.J.S.A. 2C:43-7.2, and on the aggravated criminal sexual contact and aggravated assault convictions to five-year prison terms, to run concurrent to each other and concurrent to the kidnapping sentence.

B.

The only issue before us is whether the trial court erred by not granting a judgment of acquittal on the kidnapping charge at the end of the State's case based on an alleged lack of evidence that the victim was confined for "a substantial period." See R. 3:18-1 (stating that at the end of the State's case, "the court shall, on defendant's motion or its own initiative, order the entry of a judgment of acquittal . . . if the evidence is insufficient to warrant a conviction").

In determining whether, under Rule 3:18-1, the State presented sufficient evidence for the case to go to the jury, "we apply a de novo standard of review." State v. Williams, 218 N.J. 576, 593-94 (2014). Applying that standard, "[w]e must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Id. at 594.

5

In that light, we now review the evidence presented at trial. Although various witnesses testified, the State's key witness was C.M., who recounted her ordeal during the early morning hours of May 22, 2014.

C.

At around 2:00 a.m. that day, C.M., a sex worker, was walking on Van Houten Street in Paterson when she noticed on the covered porch of an abandoned house a sex-worker friend, Lillian,[2] with two men C.M. did not know, defendant and Daniel Ortiz. C.M. joined the group on the porch and gave Lillian sixteen dollars to buy crack cocaine and heroin in the area. C.M. sold sexual favors to sustain her drug addiction -- an addiction she fed by consuming thirty to forty bags of heroin a day. While Lillian was away, defendant gave C.M. twenty dollars to perform oral sex but told her to wait until her friend came back so that both men could be gratified.

Lillian appeared approximately ten minutes later with cocaine and heroin, which the two women consumed, while the men drank alcohol and sniffed cocaine. Defendant then gave Lillian money to purchase cocaine for the two men. After the passage of approximately thirty minutes, sensing that Lillian would not be returning, C.M. said she was leaving. Defendant then told her she could not go until she paid him the money he had given to her

---

[2] This is the pseudonym used by the Appellate Division.

friend.  When she attempted to leave, defendant punched her in the face, sending her ninety-pound body "flying into the wall."  As blood poured over her face from a head wound, and with her mouth injured, defendant kneeled on C.M.'s arms and took forty dollars from her pockets.

Defendant then held a knife to C.M.'s neck and forced her to perform oral sex.  For the next several hours, despite her pleas, "no, no, no, I [do not] want to do this," defendant compelled her at knifepoint to perform various sexual acts and repeatedly penetrated her vaginally and anally.  Angered that C.M. was bleeding all over him, defendant punched her in the face again, leading her to believe her nose was broken.  Defendant further terrified C.M. by cutting off her dress and telling her that he was going to be her "pimp" and "come back every night."

Except for a time when he went to the next-door bodega, Ortiz spent most of the time on the porch "just watching."  However, while C.M. was on her knees and forced to perform oral sex on defendant, Ortiz, at defendant's invitation, anally penetrated C.M. for about five minutes.  Held against her will at knifepoint, and by brute and violent force, C.M. endured the cycle of horrors for hours.

As the sun began to rise, C.M. saw Angela, a person she knew from the neighborhood, walking by the abandoned house.  Angela testified that she

7

observed C.M. -- crying, bleeding, and naked -- on top of defendant, who was seated, as the two had sex.  As Angela and C.M. locked eyes, C.M. mouthed the words, "help me."  Angela yelled at C.M. to get up, and C.M. leapt off the porch.  Angela covered C.M. in her own clothes.  As defendant came off the porch with a knife, the two women ran in different directions, with C.M. eventually reaching a gas station.  An attendant there called 9-1-1, and police officers arrived minutes later, at approximately 6:30 a.m.

On their arrival, Paterson police officers found C.M. barefoot, bleeding, and crying.  She said she had been raped and gave a description of her assailants.  Nearby, an officer detained two men matching that description. The police took C.M. to the scene where she positively identified defendant and Ortiz as her attackers.

C.M., suffering from head and facial wounds, was taken to the hospital. She declined to submit to a several-hour sexual assault forensic exam, explaining that she was becoming "dope sick" and did not want to be touched or probed after having "been raped for a long time."

8

C.M.'s blood was discovered on both defendant's boxer shorts and one of his fingernails.[3]

## D.

At the close of the State's case, defendant made a generic motion for a judgment of acquittal, claiming that the State failed to present "a prima facie case as to all of the elements and all of the counts listed in the indictment." The trial court denied the motion, finding that based on the direct and circumstantial evidence in the record a reasonable jury could convict defendant of all the charges.

Defendant appealed, challenging only his kidnapping conviction and sentence.

## E.

The Appellate Division reversed defendant's kidnapping conviction and remanded for the entry of a judgment of acquittal. Cruz-Pena, 459 N.J. Super. at 528.[4] To come to that conclusion, it made several findings: (1) C.M.'s "confinement was inherent in the sexual abuse defendant inflicted upon her";

---

[3] The State introduced a statement made by defendant to the police after his arrest in which he denied sexually assaulting C.M. or confining her against her will. Defendant did not testify at the trial.

[4] In light of its decision to vacate the kidnapping conviction, the Appellate Division did not address defendant's claim that his sentence was excessive. Cruz-Pena, 459 N.J. Super. at 528.

9

(2) "[t]he force and threat of force defendant used to restrain [C.M.] were the same force and threats he used to accomplish the sex crime with which he was separately charged"; and (3) "the risk of harm the victim faced throughout her hours-long ordeal, while substantial, was not independent of the danger posed by defendant's continuous sexual attack." Id. at 516.

The Appellate Division relied primarily on State v. Masino, 94 N.J. 436 (1983), and State v. La France, 117 N.J. 583 (1990), for direction, noting that a kidnapping conviction "requires proof of movement or restraint 'that is not merely incidental to the underlying substantive crime.'" See id. at 521-22 (quoting La France, 117 N.J. at 591). The court ultimately concluded that C.M.'s confinement was merely incidental to "a protracted sequence of violent, nonconsensual sexual acts spanning the course of four to five hours . . . [that] were integral parts of a single course of uninterrupted criminal conduct." Id. at 525. In making that determination, the Appellate Division emphasized the fact that there was no "interruption in the ongoing sexual abuse during the period of confinement" and that defendant neither "moved C.M. off the porch" for the purpose of isolating her from public view nor bound or gagged her. See id. at 525-27. It also found that defendant's cutting off C.M.'s clothes was "part of and incident to the sexual abuse." Id. at 527.

The Appellate Division summed up its justification for dismissing the kidnapping conviction by stating that, "[w]hile C.M. remained vulnerable to repeated, indeed incessant criminal attack throughout her hours-long ordeal, her isolation and vulnerability was coextensive and coterminous with the sexual abuse." Id. at 528.

We granted the State's petition for certification, 239 N.J. 398 (2019), and its motion to stay the judgment of the Appellate Division.

II.

A.

The State submits that defendant's restraint of C.M. for nearly five hours -- during which he verbally, physically, and repeatedly sexually assaulted her; took money from her; stripped her of her clothing; and threatened future assaults -- constitutes a substantial period of confinement for purposes of the kidnapping statute. The State maintains that C.M.'s extended confinement was not merely incidental to the underlying sexual offense but rather exposed C.M. to further harm -- the continued physical and sexual attacks and threats of violence.

The State claims that the Appellate Division "utterly failed to take into account" the length of the confinement, which permitted the commission of other crimes. It dismisses the notion advanced by the Appellate Division that

"uninterrupted sexual abuse" or a "continuous sexual attack" that overlaps with the period of confinement renders the kidnapping statute inapplicable. It adds, moreover, that "it would have been impossible for defendant to commit all those heinous acts without any interruptions or breaks."

Finally, the State contends that the Appellate Division wrongly suggested that C.M. was not sufficiently isolated on the porch and that the outcome of this kidnapping-by-confinement case might "have been different had defendant moved C.M. off the porch and into the interior of the abandoned home because it would have made her more vulnerable." The State asks this Court to reinstate defendant's kidnapping conviction.

B.

Defendant urges the Court to affirm largely for the reasons expressed in the Appellate Division opinion. Defendant argues that the kidnapping statute does not apply here "because the confinement was inherent in and limited to the commission of the sexual offense." In short, defendant states that a sexual offense is not a kidnapping when "the confinement begins and ends with the commission of the sexual offense." Following that theme, defendant contends that kidnapping-by-confinement requires proof -- not present here -- that the confinement exceeded the time necessary to commit the underlying crimes and

12

that the confinement "significantly enhanced the risk of harm beyond that posed by the [underlying] crimes."

Defendant emphasizes that he did not force or lure C.M. onto the porch, tie her up or lock her away, or move her to an isolated location. He also stresses that he was acquitted of threatening her with a knife to keep her on the porch. Finally, defendant asserts that the Appellate Division merely applied "settled principles in concluding that the confinement was an integral part of the [underlying] offense and that it did not significantly add to the victim's isolation or risk of harm."

III.

A.

In deciding this appeal, we must resolve two issues. First, we must determine the scope of kidnapping-by-confinement under N.J.S.A. 2C:13-1(b). That is a matter of statutory interpretation, and therefore our standard of review is de novo. See State v. Scriven, 226 N.J. 20, 33 (2016). We owe no deference to the Appellate Division unless persuaded by the soundness of the reasoning in its opinion. Ibid. Second, viewing the evidence in the light most favorable to the State, we must decide whether the State presented sufficient evidence for a reasonable jury to convict defendant on the kidnapping charge. See R. 3:18-1; Williams, 218 N.J. at 594.

13

We begin our analysis with the relevant language of the kidnapping statute that applies to this case.

B.

N.J.S.A. 2C:13-1(b) provides that "[a] person is guilty of kidnapping if he unlawfully removes another . . . a substantial distance from the vicinity where he is found, or . . . <u>unlawfully confines another for a substantial period</u>" with the purpose "(1) [t]o facilitate commission of any crime or flight thereafter [or] (2) [t]o inflict bodily injury on or to terrorize the victim or another." (emphasis added). The kidnapping statute also provides that "[a] removal or <u>confinement</u> is unlawful . . . if it is accomplished by force, threat, or deception." N.J.S.A. 2C:13-1(d) (emphasis added). Additionally, unless the defendant "releases the victim unharmed and in a safe place prior to apprehension," kidnapping is a crime of the first degree. N.J.S.A. 2C:13-1(c)(1). Our kidnapping statute is patterned on the Model Penal Code. <u>See</u> <u>Masino</u>, 94 N.J. at 444-45.

First-degree kidnapping is one of the most serious crimes listed in the New Jersey Code of Criminal Justice and is punishable by "an ordinary term of imprisonment between 15 and 30 years." <u>See</u> N.J.S.A. 2C:13-1(c)(1). One of the distinguishing characteristics of kidnapping, as explained in the commentaries to our Code, is that "if the offense is properly defined so as to

14

be limited to substantial isolation of the victim from his normal environment, it reaches a form of terrifying and dangerous aggression not otherwise adequately punished." 2 The New Jersey Penal Code: Final Report § 2C:13-1 cmt. 3 at 182 (Criminal Law Revision Comm'n 1971) (quoting Model Penal Code § 212.1, cmt. 1 at 15 (Am. Law Inst., Tentative Draft No. 11, 1960)).

The effort to define and limit the scope of the kidnapping statute is evident in the statutory language chosen by the Legislature, requiring that a conviction be premised on removing a victim a "substantial distance" or confining a victim "for a substantial period." See N.J.S.A. 2C:13-1(b). The Legislature apparently chose the term "substantial" to prevent an overly broad reading of the new kidnapping statute -- and therefore addressed a criticism of the predecessor statute. Final Report § 2C:13-1 cmts. 3 & 4 at 181-84.

The Model Penal Code commentaries give insight into the rationale of the substantiality requirement adopted by our Legislature. Model Penal Code § 212.1 cmts. 2 & 3 at 222-23 (Am. Law Inst. 1980). That requirement "confine[s] [kidnapping] to instances where the degree of removal or the duration of confinement coupled with the purpose of the kidnapper render the conduct especially terrifying and dangerous." See Model Penal Code § 212.1 cmt. 3 at 223. In that scenario, "the removal or confinement of the victim

exposes him to risk of serious bodily injury or amounts to a form of terrorizing." Model Penal Code § 212.1 cmt. 2 at 222.

The statutory terminology -- removing a victim a "substantial distance" or confining a victim "for a substantial period" -- is not self-defining. See N.J.S.A. 2C:13-1(b). In a series of cases -- State v. Masino, 94 N.J. 436, State v. La France, 117 N.J. 583, and State v. Jackson, 211 N.J. 394 (2012) -- this Court has provided guiding principles for determining when a defendant has committed a kidnapping by removing a victim a "substantial distance" or confining a victim "for a substantial period." A kidnapping is criminal conduct that is "not ordinarily inherent in the underlying criminal conduct itself" or "merely incidental to the underlying crimes." La France, 117 N.J. at 589-90. "[N]ot every movement or confinement of a victim is a kidnapping." Id. at 586. The commission of a robbery or a sexual assault necessarily requires a confinement of the victim, but, unless the period of confinement is substantial, a robbery or sexual assault is not transformed into a kidnapping.

A kidnapping does not occur, for example, when "the burglar puts the householder in the closet while he fills his sack with the silver," id. at 587 (quoting State v. Estes, 418 A.2d 1108, 1113 (Me. 1980)), or when "the victim of a robbery is forced to open a safe in the home or go to the back of the

16

store," ibid. (citing State v. Dix, 193 S.E.2d 897, 902 (N.C. 1973)); see also Final Report § 2C:13-1 cmt. 4 at 184.

The substantial-distance-removal and substantial-period-of-confinement requirements address a scenario where a defendant "isolates the victim and exposes him or her to an increased risk of harm." See Masino, 94 N.J. at 445; see also La France, 117 N.J. at 592-93. Indeed, "the legislature realized that the risk of harm attendant upon isolation is the principal danger of the crime." Masino, 94 N.J. at 446. The "enhanced risk of harm," however, "must not be trivial." Id. at 447; accord La France, 117 N.J. at 594.

Removing a victim a substantial distance or confining a victim for a substantial period are qualitative terms, for sure, but they are also quantitative terms, even though the distance and durational requirements are not susceptible to a neat mathematical formulation. See La France, 117 N.J. at 590-91. We have upheld kidnapping convictions where the linear removal from one location to another has not been relatively far, but where the victim's isolation, sense of helplessness, and enhanced risk of harm have been great in light of the underlying crimes. See, e.g., Jackson, 211 N.J. at 418-19; Masino, 94 N.J. at 447. We also have upheld a conviction where the period of confinement was not relatively long, but where the terror and depraved acts

17

committed against the victims combined with their isolation and helplessness have been severe.  See La France, 117 N.J. at 592-94.

But the substantiality requirement has a durational component as well. For kidnapping purposes, a confinement may be incidental to another crime when the confinement is of minimal duration; however, a prolonged confinement "may not be considered incidental to another crime."  See Frank J. Wozniak, Annotation, Seizure or Detention for Purpose of Committing Rape, Robbery, or Other Offense as Constituting Separate Crime of Kidnapping, 39 A.L.R. 5th 283, § 2(a) (1996) (collecting cases); see also State v. Warner, 626 A.2d 205, 207-09 (R.I. 1993) (affirming kidnapping conviction because "the [four-to-five-hour] duration of time . . . made it far more than incidental to any [sexual assault] attempts by defendant"); State v. Lykken, 484 N.W.2d 869, 878 (S.D. 1992) (affirming convictions of kidnapping because a reasonable jury could have concluded that the three-and-a-half-hour confinement "increased the risk of harm to [the victim], especially since she was repeatedly raped").

The following example elucidates the point.  Pointing a firearm at a person, contrary to N.J.S.A. 2C:12-1(b)(4), and uttering terroristic threats against that person, contrary to N.J.S.A. 2C:12-3(a), are discrete crimes under the Code.  But continuously pointing a weapon and uttering terroristic threats

18

at a person while she is confined for a period of ten hours is substantively different -- it is a kidnapping even if the weapon-pointing and terroristic threats are entirely coextensive with the confinement because of the isolation, helplessness, and enhanced harm (not just enhanced risk of harm). Cf. La France, 117 N.J. at 593.

C.

Masino, La France, and Jackson illustrate the application of the principles discussed. In Masino, the defendant was offended that the victim would not dance with him at a disco or have coffee with him later that evening. See 94 N.J. at 437-38. After the victim dropped off a friend, the defendant pulled her from her car, beat her, dragged her across a street, through trees, and down to a pond where he plunged her head in the water, sexually assaulted her, then took her clothes and left. Ibid. Although the linear distance that the defendant removed the victim from the car to the pond may not have been far in absolute terms, it was "more than merely incidental to the underlying crime" because the distance travelled isolated the victim and enhanced the risk of harm to her. See id. at 446-47.

We upheld the kidnapping conviction in Masino but struck a note of caution, warning prosecutors that our decision should not be read "as

encouragement for use of a kidnapping charge as some sort of 'bonus' count in an indictment." Id. at 447-48.

In La France, we upheld a jury verdict of first-degree kidnapping by confinement. 117 N.J. at 585. In that case, while committing a burglary in the early morning hours, the defendant encountered the homeowners, a husband and his seven-month pregnant wife. Id. at 585, 591-92. Pretending to have a gun, the defendant "forced the wife to tie up her husband in the bedroom" and then dragged her into the hallway and sexually assaulted her. Id. at 592. The husband unbound himself more than thirty minutes later and subdued the defendant. Id. at 592-93.

We held that the jury could have rationally concluded that the thirty-minute confinement of the husband constituted a "substantial period" because the husband was left isolated while the defendant sexually assaulted and terrorized his wife. Ibid. We determined that the confinement was "more than merely incidental to the underlying crime," id. at 594 (quoting Masino, 94 N.J. at 447), given the psychological injury caused by the sordid acts committed against the couple "and the inability of the isolated husband to avert the terror to his wife and injury to her and their unborn child," id. at 593.

In Jackson, we found that the State had presented sufficient evidence to support either a substantial-distance-removal kidnapping or a substantial-

20

period-confinement kidnapping.  211 N.J. at 400, 418.  In that case, the defendant entered the victim's taxi at a stoplight, pointed a gun at the taxi driver's chest, and took from him sixty-five dollars in collected fares and money from his wallet.  Id. at 400-01.  The defendant ordered the victim to drive him to Broadway in Paterson.  Id. at 401-02.  At gunpoint, the taxi driver drove 0.8 miles, approximately fifteen city blocks, to a location where the defendant directed him to pull over and fled.  Id. at 402, 418.

In upholding the kidnapping conviction on the removal and confinement theories, we emphasized that the gun-wielding defendant "kept the victim in an isolated and vulnerable position," compelling him to drive "for several minutes, through city streets, exposing him to the risk of a serious accident, injury or death."  Id. at 419.  We concluded that the victim was "exposed to a substantially extended confinement and a substantially increased risk" that "was not coextensive with the armed robbery."  Ibid.

## IV.

We now distill the principles from Masino, La France, and Jackson, as well as from the commentaries to the New Jersey Code of Criminal Justice and the commentaries to the Model Penal Code, and apply them to the evidence in this case.

21

Defendant confined C.M. on the covered porch of an abandoned house at knifepoint for approximately four to five hours in the early morning dark leading to sunrise. During those terrifying hours, he punched her so hard that her body crashed against a wall, causing a head wound and blood to course over her face. He punched her again later for bleeding on him. He sexually assaulted her repeatedly over those hours, forcing her to perform oral sex and penetrating her vaginally and anally, and invited his friend to penetrate her anally. He ignored her pleas to stop, took money from her, cut off her clothes, leaving her exposed, and threatened to return every night to "pimp" her.

The sheer duration of the confinement and the number of depraved and violent acts committed against her far exceeded the scenarios in Masino, La France, and Jackson, in which we upheld kidnapping convictions. C.M. was isolated on a porch in the early morning dark -- confined by brute force and terrifying violence. See Masino, 94 N.J. at 446 ("[T]he risk of harm attendant upon isolation is the principal danger of [kidnapping]."). She was not only subject to an "enhanced risk of harm," one of the defining characteristics of kidnapping by confinement, but she was harmed by the multitude of criminal acts committed against her. See id. at 447.

Indeed, this case represents a classic example of kidnapping by confinement. Here, the nature of the confinement not only subjected C.M. "to

22

substantial isolation," but also "reache[d] a form of terrifying and dangerous aggression not otherwise adequately punished." See Final Report § 2C:13-1 cmt. 3 at 182 (quoting Model Penal Code § 212.1, cmt. 1 at 15 (1960)).

In our view, the sheer duration of the confinement combined with the crimes committed against her alone meet the "substantial period" requirement -- even if the repetitive acts of sexual abuse and the physical assaults were co-extensive with the prolonged confinement. See N.J.S.A. 2C:13-1(b). We therefore reject the Appellate Division's conclusion that a kidnapping did not occur because the "incessant criminal attack throughout [C.M.'s] hours-long ordeal, [and] her isolation and vulnerability [were] coextensive and coterminous with the sexual abuse." See Cruz-Pena, 459 N.J. Super. at 528. This case meets all of the statutory criteria for first-degree kidnapping: defendant confined C.M. for a substantial period with the purpose to facilitate the commission of sexual crimes and aggravated assault and to terrorize C.M., see N.J.S.A. 2C:13-1(b); he accomplished the confinement by force and threat, see N.J.S.A. 2C:13-1(d); and he did not release C.M. unharmed and in a safe place before his apprehension, see N.J.S.A. 2C:13-1(c)(1).

The concern expressed in Masino about the potential for prosecutorial overreach in transposing a kidnapping charge over a substantive crime -- a "'bonus' count in an indictment" -- is not present here. See Masino, 94 N.J. at

23

448.  The evidence in this case, viewed in the light most favorable to the State, clearly established an ample basis for a reasonable jury to return a verdict of first-degree kidnapping beyond a reasonable doubt.  See Williams, 218 N.J. 594; R. 3:18-1.  The trial court properly denied defendant's motion for a judgment of acquittal.

V.

For the reasons expressed, we reverse the judgment of the Appellate Division and reinstate defendant's first-degree kidnapping conviction.  We remand to the Appellate Division to address defendant's previously raised challenge to his sentence.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.